973 So.2d 548 (2008)
In re Petition of Jane DOE for a Judicial Waiver of Parental Notice of Termination of Pregnancy.
Jane Doe, Appellant.
No. 2D07-5975.
District Court of Appeal of Florida, Second District.
January 4, 2008.
Order Denying Rehearing January 23, 2008.
*550 Rebecca Harrison Steele, ACLU Foundation of Florida, Inc., Tampa; Randall C. Marshall, ACLU Foundation of Florida, Inc., Miami; and Barbara J. Prasse, Tampa, for Appellant.
Order Denying Rehearing En Banc January 23, 2008.
KELLY, Judge.
The appellant, a minor, challenges the final order dismissing her petition for judicial waiver of the statutory requirement that her physician notify her parent or guardian prior to terminating her pregnancy. We affirm because the minor has failed to carry her burden of proving the grounds for a waiver under section 390.01114, Florida Statutes (2007), alleged in her petition.
Section 390.01114(2)(a) requires a physician to notify a minor's parent or legal guardian at least forty-eight hours before performing an abortion on that minor. A minor may petition a circuit court to waive the notification requirement. § 390.01114(4)(a). Subsections (4)(c) and (d) of the statute establish three grounds for granting a waiver, two of which are pertinent here. Subsection (4)(c) provides for a waiver if the court finds, by clear and convincing evidence, that the minor is sufficiently mature to decide whether to terminate her pregnancy. Subsection (4)(d) provides for a waiver if the court finds, by a preponderance of the evidence, that the notification of a parent or guardian is not in the best interests of the minor.
The transcript of the hearing on the minor's petition is eleven pages in length, and the minor's testimony fills approximately six of those pages. In those six pages we learn that she is seventeen years old, lives with her parents, attends high school, plans to attend junior college and then transfer to a university "for maybe a pharmaceutical degree or a pediatrician," and earns grades that are "[a]verage, like A, B, and Cs." We also know that she has worked part-time at two different restaurants during the past year and a half. She explained to the court that she and the father of her child were using condoms when she became pregnant and she answered affirmatively when, asked by her attorney whether in her mind she was "doing everything . . . under the circumstances to try and prevent this from happening."
The minor testified that she and her parents are Catholic and attend church every Sunday. She stated that if her parents knew that she was pregnant, "they would be upset with me" and that if they knew she had an abortion, "they would feel better that I took it into my own hands and showed responsibility." She did not want to tell them about the abortion now because she did not think they would understand "right now," but she planned to tell them in the future when she "felt comfortable with telling them what she did." The father of the child no longer speaks to the minor and has no interest in raising the child. When asked about abortion versus having the child and perhaps giving it up for adoption she explained that she "probably" would have to go to "some pregnancy school" rather than her regular school if she did that. She answered "yes" and "mm hm" when asked by her attorney whether she had "considered all alternatives to terminating her pregnancy" and had "given that long and thoughtful consideration."
As the party seeking an exception to the notification provision of the statute, the minor bears the burden of proof. See In re Estate of Livingston, 172 So.2d 619, 620 (Fla. 2d DCA 1965) (noting that "generally an exception to a statute must be proven by the one seeking to establish, it."); see also In re Doe, 932 So.2d 278, 285 *551 (Fla. 2d DCA 2005) (recognizing that the statute requires the minor to prove maturity by clear and convincing evidence). After hearing the testimony outlined above, the trial court found that the minor had not adduced sufficient evidence to prove any of the criteria that would permit a judicial waiver of the parental notification requirement. We agree.
In arguing for reversal, the minor asserts that she is sufficiently mature to decide whether to terminate her pregnancy. The statute requires that she establish maturity by clear and convincing evidence. § 390.01114(4)(c). "Determining whether a minor is sufficiently mature to decide to have an abortion without notifying her parents is an inherently `difficult, yet delicate and important, decision that a trial court must necessarily make, not only in light of the testimony of the minor, but also in the context of the minor's demeanor, background, and sundry other circumstances.'" In re Doe 2, 166 P.3d 293, 295 (Colo.Ct.App.2007) (quoting Ex parte Anonymous, 806 So.2d 1269, 1274 (Ala. 2001)). The maturity of a pregnant minor must be determined on a case-by-case basis. Bellotti v. Baird, 443 U.S. 622, 643, n. 23, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (Bellotti II). In attempting to define maturity for the application of a bypass statute one court noted:
Maturity is "difficult to define, let alone determine. . . ." Bellotti v. Baird, 443 U.S. 622, 643-44 n. 23, 99 S.Ct. 3035, 3048 n. 23, 61 L.Ed.2d 797 (1979) (commonly referenced as Bellotti II). Notwithstanding, determine it we must. While the U.S. Supreme Court has not explicitly defined "maturity" in the context of parental notification or consent statutes, it has observed that "minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them."`(Emphasis supplied.) Id., 443 U.S. at 635, 99 S.Ct. at 3043-44.
In re Petition of Anonymous 1, 251 Neb. 424, 558 N.W.2d 784, 787-88 (1997). Also citing Bellotti II, another court, in its attempt to define maturity, observed:
Manifestly, as related to a minor's abortion decision, maturity is not solely a matter of social skills, level of intelligence or verbal skills. More importantly, it calls for experience, perspective and judgment. As to experience, the minor's prior work experience, experience in living away from home, and handling personal finances are some of the pertinent inquiries. Perspective calls for appreciation and understanding of the relative gravity and possible detrimental impact of each available option, as well as realistic perception and assessment of possible short term and long term consequences of each of those options, particularly the abortion option. Judgment is of very great importance in determining maturity. The exercise of good judgment requires being fully informed so as to be able to weigh alternatives independently and realistically. Among other things, the minor's conduct is a measure of good judgment. Factors such as stress and ignorance of alternatives have been recognized as impediments to the exercise of proper judgment by minors, who because of those factors "may not be able intelligently to decide whether to have an abortion." Am. Coll. of Obstetricians & Gynecologists v. Thornburgh, 737 F.2d 283, 296 (3d Cir.1984)
H___ B___ v. Wilkinson, 639 F.Supp. 952, 954 (D.Utah 1986) (footnote omitted). Similarly, another court has stated that when evaluating maturity, pertinent factors include, but are not limited to, the minor's physical age, her understanding of the medical risks associated with the procedure, *552 as well as emotional consequences, her consideration of options other than abortion, her future educational and life plans, her involvement in civic activities, any employment, her demeanor and her seeking advice or emotional support from an adult. In re Doe, 924 So.2d 935, 939 (Fla. 1st DCA 2006). After surveying the decisions of other courts, the Supreme Court of Texas wrote that those courts had
inquired into how a minor might respond to certain contingencies, particularly assessing whether the minor will seek counseling in the event of physical or emotional complications. Many courts have assessed the minor's school performance and activities, as well as the minor's future and present life plans. A few courts have explicitly assessed the minor's character and judgment directly. Most of the decisions have also considered the minor's job experience and experience handling finances, particularly assessing whether the minor is aware of the financial obligations inherent in raising a child. Almost all courts conduct the maturity inquiry, either explicitly or implicitly, against the background circumstances of the minor's experience. These include the minor's relationship with her parents, whether she has social and emotional support, particularly from the male who would be a father, and other relevant life experiences.
In re Doe 2, 19 S.W.3d 249, 256 (Tex.2000).
Further, in assessing maturity, the trial court "may draw inferences from the minor's composure, analytic ability, appearance, thoughtfulness, tone of voice, expressions, and her ability to articulate her reasoning and conclusions." Ex parte Anonymous, 806 So.2d 1269, 1274 (Ala. 2001). The criteria suggested by these cases, while not exhaustive, is consistent with the statutory mandate that the trial court hear evidence relating to "the emotional development, maturity, intellect, and understanding of the minor, and all other relevant evidence" and at a minimum, provides a sound starting point in attempting to determine whether a minor is sufficiently mature to decide whether to have an abortion. § 390.01114(4)(e).
The minor's testimony in this case tells us virtually nothing about her level of maturity. Significantly, the minor failed to demonstrate any knowledge regarding any specific immediate or long-term physical, emotional, or psychological risks of having an abortion. The record contains no evidence indicating that the minor was aware of, appreciated, or had seriously considered those risks. Nor is there any evidence that she sought advice or emotibnal support from any adult or that she had considered what she would do should any physical or emotional complications arise from the abortion. The minor responded affirmatively to her attorney's conclusory questions regarding whether she had thoughtfully considered alternatives to having an abortion. However, because she did not elaborate it is impossible to evaluate what alternatives she considered, how she weighed those alternatives, or how she arrived at her decision. The minor still lives at home with her parents, she works but she gave no indication as to what her job involves, and she did not indicate that she had assumed any other responsibilities, financial or otherwise, that one would associate with maturity. In light of the myriad deficiencies in the evidence offered by the minor, no reasonable fact finder could conclude that she had proven by clear and convincing evidence that she was sufficiently mature to decide whether to terminate her pregnancy.[1]
*553 The minor alternatively asserts that notification of a parent or guardian is not in her best interest. The statute requires that this exception to the notification requirement be proven by a preponderance of the evidence. In determining whether notification would not be in the minor's best interests, the trial court should weigh the advantages and disadvantages of parental notification in the minor's specific situation. In re Doe 2, 166 P.3d at 296; In re Doe 2, 19 S.W.3d 278, 282 (Tex.2000). Some factors to be considered are: the minor's emotional or physical needs; the possibility of intimidation, other emotional injury, or physical danger to the minor; the stability of the minor's home and the possibility that notification would cause serious and lasting harm to the family structure; the relationship between the parents and the minor and the effect of notification on that relationship; and the possibility that notification may lead the parents to withdraw emotional and financial support from the minor. In re Doe, 932 So.2d at 285-86; see also In re Doe 2, 166 P.3d at 296; . In re Doe, 19 Kan.App.2d 204, 866 P.2d 1069, 1075 (1994); In re Doe 2, 19 S.W.3d at 282.
Here, the minor did not present evidence pertinent to any of these factors. When asked why she did not want to tell her parents about the abortion, her only stated concern was that she thought they would not understand. She was also concerned that they would be upset if they knew she was pregnant. This amounts to nothing more than a generalized fear of telling her parents and does not, by itself, establish that notification would not be in her best interests. See In re Doe 2, 166 P.3d at 296; see also In re Doe 2, 19 S.W.3d at 282 n. 23 (noting that a generalized fear by itself is not sufficient and collecting cases that agree). Accordingly, we conclude that the trial court correctly determined that the minor's reason for not wanting to tell her parents about the abortion was not sufficient to establish that notification was not in her best interest.
The minor also argues that reversal is required because the judge based his decision on his personal views rather than facts of record. We reject this contention as unsupported by the record. Admittedly, the judge, in response to statements made by the minor's attorney, made some comments that at least by implication reflected his personal views regarding abortion. However, read in context, it is evident that the judge understood that the sole question he was to decide was whether the minor's parents should be notified, not whether the minor should have an abortion. It was the judge, not the minor's attorney, who attempted to elicit testimony from the minor regarding why she did not want to have her parents notified and who pressed her for additional information when her answer was simply that she thought her parents would not understand. Even if we agreed that the judge's comments suggested that he was influenced by his personal beliefs rather than the facts of record, we would nevertheless be constrained to affirm. Such an error is harmless in a case such as this where the record is devoid of any factual basis upon which the judge could have concluded that the minor had satisfied her burden to prove Any of the criteria supporting a judicial waiver of the parental notification requirement.
For the same reason, we reject the minor's contention that deficiencies in the trial court's factual findings require that *554 we reverse. Unlike the situation presented in In re Doe, in this case the record of the hearing does not contain evidence supporting granting the minor's petition. 932 So.2d at 284. In In re Doe, this court reversed but declined to remand for additional findings where "the record before the circuit court [was] not likely to yield findings sufficient to deny the waiver petition." Id. at 283. Here, a reversal and remand for additional findings, even if it could be accomplished in a manner consistent with the time constraints imposed by section 390.01114(4)(b) and Florida Rule of Appellate Procedure 9.110(n), could not possibly yield findings sufficient to grant the minor's waiver petition.
Affirmed.
CASANUEVA and CANADY, JJ., Concur.

ORDER ON MOTION FOR REHEARING EN BANC
This court previously issued an unpublished order denying appellant's motion for rehearing en banc with the notation that this published order would follow. Accordingly:
Appellant filed a timely motion for rehearing en banc of the January 4, 2008, panel decision on the grounds that the case is of exceptional importance and that en banc consideration is necessary to maintain uniformity in the court's decisions. At the request of a judge in regulam active service on the court, a vote was taken on the motion. See Fla. R.App. P. 9,331(d)(1). The court was evenly divided concerning the disposition of the motion, Judges Altenbernd, Fulmer, Northcutt, Silberman, Villanti, Wallace, and LaRose voting to grant a rehearing en banc and Judges Whatley, Casanueva, Salcines, Stringer, Davis, Kelly, and Canady voting to deny it. Pursuant to rule 9.331(a), the panel decision stood and the motion for rehearing en banc was denied. Thereafter, Judge La-Rose withdrew his vote in favor of the motion and voted to deny it.
WHATLEY, CASANUEVA, SALCINES, STRINGER, DAVIS, CANADY, KELLY and LaROSE, JJ., Concur.
CASANUEVA, J., Concurs with opinion in which SALCINES, J., concurs.
KELLY, J., Concurs with opinion in which WHATLEY, SALCINES, STRINGER, CANADY and LaROSE, JJ., concur.
NORTHCUTT, C.J., and ALTENBERND, FULMER, SILBERMAN, VILLANTI and WALLACE, JJ., Dissent.
NORTHCUTT, C.J., Dissents with opinion in which FULMER, J., concurs.
ALTENBERND, SILBERMAN and VILLANTI, JJ., dissent with opinions.
CASANUEVA, Judge, Concurring.
Florida Rule of Appellate Procedure 9.331(a) allows for en banc proceedings in two circumstances: "En banc hearings and rehearing shall not be ordered unless the case is of exceptional importance or unless necessary to maintain uniformity in the court's decisions." Because I conclude that this case fits neither category, I concur in the court's decision to deny rehearing en banc. My reasoning is more fully explained below.

I. Background
The appellant, Jane Doe, a minor who will turn eighteen in a few months time, sought to terminate her pregnancy without the requirement of Florida law that her parents be notified of the impending procedure. § 390.01114, Fla. Stat. (2007) (tited *555 "Parental Notice of Abortion Act"). She sought a "judicial bypass" of the notice requirement under subsections (4)(c) and (4)(d) (subsection four is titled "Procedure for Judicial Waiver of Notice"). These two subsections address two distinct situations that carry different burdens of proof:
(c) If the court finds, by clear and convincing evidence, that the minor is sufficiently mature to decide whether to terminate her pregnancy, the court shall issue an order authorizing the minor to consent to the performance or inducement of a termination of pregnancy without the notification of a parent or guardian. If the court does not make the finding specified in this paragraph or paragraph (d), it must dismiss the petition.
(d) If the court finds, by a preponderance of the evidence, that there is evidence of child abuse or sexual abuse of the petitioner by one or both of her parents or her guardian, or that the notification of a parent or guardian is not in the best interest of the petitioner, the court shall issue an order authorizing the minor to consent to the performance or inducement of a termination of pregnancy without the notification of a parent or guardian. If the court finds evidence of child abuse or sexual abuse of the minor petitioner by any person, the court shall report the evidence of child abuse or sexual abuse of the petitioner, as provided in s. 39.201. If the court does not make the finding specifled in this paragraph or paragraph (c), it must dismiss the petition.
The Honorable Raul C. Palomino, Jr., Acting Circuit Judge for the Thirteenth Judicial Circuit, held a timely hearing on her petition and afterwards entered an order dismissing it, finding that she did not carry her burden of proof under either subsection. She appealed the dismissal of her petition to this court, and a threejudge panel, in an expedited proceeding, affirmed the decision of the trial court with a written opinion. In the Interest of Doe, 2D07-5975 (Fla. Jan. 4, 2008). The panel affirmed the trial judge's order because Ms. Doe had not presented substantial, competent evidence to convince him by either a clear and convincing standard under subsection (4)(c) or a preponderance standard under subsection (4)(d) that her parents should not be notified of the termination of pregnancy.[1] She then filed an emergency motion for certification and an emergency motion for rehearing en banc. In an even split of this court, these motions were denied by an order filed on January 11, 2008, effectively leaving the decision of the panel affirming the trial court undisturbed.[2] Our order stated that a published order would follow.

II. En Banc Consideration for Cases of "Exceptional Importance"
No one can doubt that this case is of "exceptional importance" to Ms. Doe. However, that is not the standard this court must use in deciding Whether to grant en banc consideration to a litigant. Cases of exceptional importance that merit *556 en banc consideration have to do with the issues that impact a larger share of the community or the jurisprudence of the state. Compare Rook v. Rook, 469 So.2d 172, 174 (Fla. 5th DCA 1985) (granting en banc consideration on the issue of "the mechanistic approach of reviewing the trial court's discretion based solely upon fixed percentages assessed against noncustodial wage-earners" in domestic cases), with Gainesville Coca-Cola v. Young, 632 So.2d 83 (Fla. 1st DCA 1993) (denying motion for rehearing en banc in a case where the district court's panel decision reversed the judge of compensation claims' order in favor of the worker because the record did not contain competent, substantial evidence to support the order).
After the panel decision affirmed the trial court's order, Ms. Doe's emergency motion for rehearing en banc and for certification claimed that en banc consideration was necessary because the case is one of exceptional importance because it may "affect large numbers of persons" or "implicates `fundamental legal or constitutional rights.'"[3] I agree with Ms. Doe that the procedures outlined in section 390.01114 may affect large numbers of persons and that a woman's decision to terminate a pregnancy implicates a fundamental legal and constitutional right. However; she reads too much into the panel's decision. A close reading of the panel's opinion shows that the panel strictly adhered to its reviewing role in the limited circumstances of her particular case. St. Vincent's Med. Ctr., Inc. v. Mem'l Healthcare Group, Inc., 967 So.2d 794, 799 (Fla.2007) (reiterating that "appellate courts review a trial court's factual findings to determine the existence of supporting competent, substantial evidence"). As this court has previously stated, it is the minor's burden, when seeking a waiver of the notification provisions of the statute, to prove to the trial judge, not that she has the maturity of an adult, but the maturity to make this important decision. In re Doe, 932 So.2d 278, 284. (Fla. 2d DCA 2005) (I will refer to this decision as Doe-Polk as it originated from that county). The posture and record in this case put it in line with the legal posture of Gainesville Coca-Cola rather than with Rook. As the petitioning minor, Ms. Doe had the burden to prove to the trial judge, by clear, and convincing evidence, that she was sufficiently mature to make this decision.[4]
Clear and convincing evidence
requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.
Inquiry Concerning Davey, 645 So.2d 398, 404 (Fla.1994). There are several passages in the record which illustrate the lack of precision of Ms. Doe's testimony. Two merit examination.
*557 At the beginning of the hearing, Ms. Doe described herself as a seventeen-yearold high school senior. Her counsel then asked her what her plans were after high school. She replied that she is "going to go to H.C.C. [Hillsborough Community College] for two years and then I am transferring to U.S.F. [University of South Florida] for maybe a "pharmaceutical degree or a pediatrician." Her counsel's questions then turned to the grades she earned and her work experience.
Ms. Doe's testimony is indicative of an educational aspiration or ultimate career goal. It is not, however, indicative of a plan. If an educational plan is an indication of maturity in making important life decisionsand it isa more developed factual basis is necessary to evidence such plan. For example, as a senior in high school, and midway through the academic year, evidence that she had in fact submitted an application for admission to the educational institution she identified would suggest a true plan. Generally, admission requires an appropriate test score from a recognized testing organization. The taking of such a test is substantial factual evidence of a plan. Proof of acceptance, in my view, would provide further factual support, although being denied acceptance does not indicate lack of a plan or lack of maturity. Alternatively, testimony that Ms. Doe is presently embarking on her plan and has identified the requirements for admission would also have been of evidentiary value. The present record contains no evidence of any step Ms. Doe has taken in furtherance of any educational plan. I do not imply that she has not done these things, only that she failed to present to the trial judge sufficient, detailed evidence of mature behavior in furthering any plan for her education. The judge heard only conclusory answers. Without such supporting facts, he could conclude that there was no plan.
In a similar vein showing failure to develop facts, i.e., sufficient evidence rather than conclusory statements, her counsel asked Ms. Doe if she had considered all the alternatives to terminating her pregnancy. The monosyllabic answer was "yes." When asked if she had given her decision to terminate the pregnancy long and thoughtful consideration, she answered "Mm hm." When asked if this had been a difficult decision to arrive at, she answered again simply "yes." These monosyllabic answers to several important questions fail to inform the trial judge of facts that would support a legal conclusion that Ms. Doe is "sufficiently mature to decide whether to terminate her pregnancy." Development of these areas by illuminating factual testimony is necessary, in my view, to meet the standard of clear and convincing evidence. The record before the trial judge fails to identify the alternatives Ms. Doe considered and fails to advise the trial court of the depth or duration of her deliberative process. Next, when telling the judge about the discussion she had with the father of the baby, all she said was that she would find it difficult"a hassle"to do three things, i.e., a baby, school, and work. There is no mention that any medical or psychological ramifications were consideredeven when prompted by the judgeor how long the actual consideration lasted or whether anyone was available for consultation and if consultation was undertaken or unnecessary. If the trial judge is to determine whether a petitioner is sufficiently mature, facts, not conclusions, are needed.
The many instances of a lack of factual basis of maturity are discussed in more detail in the panel's written decision, authored by Judge Kelly. It may be that further facts were not provided because such facts did not exist or because the proper inquiry was not made. For whichever *558 reason, sufficient factual evidence was not presented to carry the legislatively established burden of proof for a prima facie case.
I contrast the state of this record with the record in Doe-Polk in which this court reversed a denial of the waiver because the record developed in the trial court showed that sufficient maturity was shown:
[T]he record of the hearing below contains evidence on the factors set forth in the statute. All of that evidence is undisputed and it supports granting Doe's petition. Doe's age bears positively on the statutorily-mandated inquiry into her emotional development, maturity, and understanding. The same is true of her stellar academic performance in high school, of her ongoing quest to prepare herself for a career, and of her financial contributions to her living expenses and those of her family. Doe's emotional development and maturity are further evidenced by her committed relationship with a young man she intends to marry, by her consultation with him about her condition, by her attempt to address the situation medically, and, indeed, by her determination to do so at this time rather than wait until she turns 18 and needs no judicial bypass to avoid informing her parents. Her understanding of her circumstances is manifest in her appreciation that there are medical risks associated with the procedure, as well as religious and emotional consequences. Finally, Doe's assessment of her relationship with her parents and of their likely reaction to her decision is consistent with all the other circumstances of the case; certainly, it is not the sort of unrealistic view that might be expected of someone who does not have the emotional development, maturity, intellect, or understanding contemplated in the statute.
Doe-Polk, 932 So.2d at 284. I decline to address point-by-point the degrees of dissimilarity between the record in this case and the record established in Doe-Polk. The reader is referred to the panel opinion in this case which fully discusses the shortcomings of the factual basis provided the trial judge. We reversed in Doe-Polk and granted a judicial by-pass without remand for another order because the record was sufficient to satisfy the statutory requirements. This case presents the other side of the coin of appellate review, i.e., the panel affirmed because the record as developed below was insufficient to reverse, and remand would be futile because the necessary facts were not present.

III. En Banc Consideration "To Maintain Uniformity in the Court's Decisions"
Ms. Doe's motion for rehearing en banc also cited this reason as a basis to grant her motion, claiming that the panel decision in this case conflicts with Doe-Polk and In re E.B.L., 544 So.2d 333 (Fla. 2d DCA 1989). My discussion immediately above explains why I do not believe her case conflicts with Doe-Polk. The panel concluded that it would be futile to remand, especially given the time constraints imposed by the statute and the appellate rules, for the same reason outlined in Doe-Polk, i.e., examination of the trial record itself was sufficient to support the appellate court's conclusion. Ms. Doe also cites In re E.B.L., 544 So.2d at 335, for the proposition that a trial court's order must contain adequate findings so the reviewing court can determine "whether the trial court made a legally sound decision." Given the sensitive nature of these proceedings, the same time constraints, and the paucity of facts before the trial court, the panel had the necessary record to review the correctness of the trial judge's decision.

*559 IV. Trial Judge's Role
Regarding the trial judge's role in nonadversarial proceedings such as this, I offer the following. Previously, I set forth certain portions of Ms. Doe's testimony. It is conceivable that a trial court could conclude that such testimony was ambiguous. In situations where ambiguous testimony is presented, the trial judge is not required to be a passive observer. There is authority supporting a role for the trial judge to clarify ambiguous testimony. "The requisite of a neutral factfinder does not foreclose a judge from asking questions designed to make prior ambiguous testimony clear. But that general ability to clear up the ambiguous is not an invitation to trial judges to supply essential elements in the state's case." McFadden v. State, 732 So.2d 1180, 1185 (Fla. 4th DCA 1999).
In this instance, the trial court may have been well served in the pursuit of facts, as perhaps would have Ms. Doe, to follow-up her ambiguous testimony with further inquiry. The results of that inquiry would have assisted the trial judge's performance of his statutorily mandated process of setting forth the appropriate findings of fact and measuring those facts against the statutorily required burden of proof.[5] Certainly, the answers to such inquiry would have enhanced appellate review. It would have been preferable for the trial judge to engage in this process rather than setting forth his personal family circumstances and religious beliefs, which gave rise to an appellate challenge to his impartiality.[6]
In summary, on this record, Ms. Doe failed to carry her statutorily mandated burden of proof entitling her to a judicial by-pass from the trial judge or subsequent relief from this appellate court. Simply put, she did not present a prima facie case that she possessed sufficient maturity to make the decision to terminate her pregnancy without notification to her parents. While Judge Palomino may be criticized for the limited extent of his findings, it must be remembered that facts must first be placed in evidence before the trial judge can make appropriate findings.

V. Concluding Observations
Presently, there appears to be no bar preventing Ms. Doe from filing a new petition seeking judicial by-pass. Section 390.01114 contains no language that limits a petitioner to but one petition. The legislative policy set forth in this provision is to ensure that only a sufficiently mature petitioner may be awarded relief. ImiIlicit in this policy are the recognition of an individual's personal growth over time and the ability of the individual to attain sufficient maturity. This process is not static. Since the time of the trial court's dismissal of her petition, Ms. Doe may have further contemplated the significant issues involved in terminating her pregnancy, sought the advice of a trusted adult or medical or psychological professional, or accomplished other actions evidencing her maturity.[7]
*560 Further, I see no impediment to her filing a new petition posed by the doctrine of res judicata. Essenson v. Polo Club Associates, 688 So.2d 981, 983 (Fla. 2d DCA 1997), holds that Tin order for the doctrine of res judicata to apply there must in each case be, (1) an identity of the thing sued for, (2) an identity of the cause of action, (3) an identity of parties, and (4) an identity of the capacity of the parties." Further, for res judicata to apply, there must have been final judgment on the merits.
After the trial court enters the original final judgment decree, it is res judicata of the facts and circumstances at the time the judgment became final. Thus, there is a presumption in favor of the reasonableness of the original decree. This presumption may be overcome when changes in circumstances have arisen which warrant and justify modification of the original decree.
Wade v. Hirschman, 903 So.2d 928, 932-33 (Fla.2005). Ms. Doe's circumstances do not fit the requirements of res judicata because, first of all, there has not been a final judgment on the merits. In accordance with the mandate of the statute, see sections 390.01114(4)(c) and (d), the trial judge dismissed her petition when he found that she had not made the required evidentiary showing. This is a circumstance similar to a dismissal of a complaint for failure to state a cause of action. Thereafter, the plaintiff is allowed an opportunity to amend. Second, because the proceedings were nonadversaria,[8] there is no identity of the parties, although the other identities may be satisfied. Only Ms. Doe appeared before the trial judge. There was no opposing party to crossexamine her.
Moreover, under our state's rules of civil procedure, res judicata is an affirmative defense that must be raised by the opposing party. Proceedings under this statute are non-adversarial and thus, there is no party to raise the defense.
A judicial by-pass of parental notification is allowed under this statute when the minor evidences, by clear and convincing proof, that she is sufficiently mature to make this decision without parental involvement or when she evidences, by a preponderance standard, that it is in her best interest to waive notification to her parents. The panel decision noted the dearth of evidence in this record. This record also evidences a unique confluence of circumstances in that her counsel was ill and inexperienced and that the matter was heard by an acting circuit judge who may have been unfamiliar with proceedings of this nature. It may be that Ms. Doe is sufficiently mature, but circumstances conspired to deprive her of the ability to demonstrate it. Because, maturation, like pregnancy, is an ongoing process, she should not be precluded from petitioning again.
As a final note, let me suggest that allowing her another opportunity to petition *561 for a waiver of notification militates against construing the requirements of the Act as a burden on her right, as it presently exists, to terminate her pregnancy and thus would further support the constitutionality of the Act. See Cincinnati Women's Servs., Inc. v. Taft, 468 F.3d 361 (6th Cir.2006).
SALCINES, J., Concurs.
KELLY, Judge, Concurring.
Applying a harmless error analysis as mandated by section 59.041, Florida Statutes (2007),[9] the panel concluded that neither the inadequacy of the trial court's order nor the trial court's inappropriate commentary required reversal given the failure of the minor to provide the trial court with enough facts to permit a reasonable factfinder to conclude that she had satisfied her burden of proof under the parental notification statute. In reaching its conclusion the panel relied, as did this court in. Doe, on the body of case law that has developed in the twenty-eight years since the Supreme Court decided Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). The factors the panel opinion recites as appropriate indicators of maturity or that are pertinent to a best interest inquiry are gleaned from that case law, they are well-established and widely accepted, not newly announced.
While the parental notification statute plainly requires findings, it just as plainly places on the minor the burden to prove her entitlement to a judicial waiver and it mandates that if the court "does not make the finding specified in this paragraph or paragraph (d), it must dismiss the petition."[10] We are not free to enforce one portion of the statute at the expense of another. Nor does anything in the statute obviate this court's obligation to perform a harmless error analysis. Here, the inadequacy of the trial court's order did not hamper this court's ability to review the trial court's determination that the minor had failed to meet her burden of proof. These proceedings are not adversarial, and the trial court in this case was not presented with competing facts from which it had to choose. The undisputed facts were simply not legally sufficient to satisfy the minor's burden of proof.[11] Had the facts been legally sufficient to support a determination that the minor had satisfied her burden of proof, this obviously would be a *562 different case and one in which the absence of findings might well impede this court's review. However, that was not the case.
The panel decision likewise applied a harmless error analysis in considering the effect of the trial court's inappropriate commentary. Significantly, the minor had clearly and unequivocally indicated she had nothing else to offer before the trial court made the offending comments; accordingly, the comments could not have deprived the minor of her opportunity to offer evidence in support of her petition. Although the panel rejected the contention that the trial judge based his decision on his personal beliefs, it also concluded that even if his decision was a product of a personal bias, we were constrained to affirm because the minor had failed to meet her burden of proof, and the statute mandates that under those circumstances, the petition must be dismissed.
As outlined above, the resolution of this case involved the application of accepted principles of appellate review and well-established law. For that reason, I do not believe it constitutes a case of exceptional importance.
Nor do I believe that en banc consideration is necessary to maintain uniformity in this court's decisions. The picture painted by the few facts the minor provided in her testimony stand in stark contrast to the picture painted by the facts recited in this court's earlier Doe opinion or, for that matter, the facts recited in any reported case in Florida. Each minor is entitled to have her case decided based on her individual circumstances; thus, these cases must necessarily be decided on a case-by-case basis. See Bellotti, 443 U.S. at 643, n. 23. Accordingly, it is possible that even factually similar cases might be decided differently. That, however, is not what occurred here. What sets this case apart from Doe and every other reported decision in this state is what the minor did not say, not what she did say.
Those omissions are material to the determination of maturity and best interests as those concepts have been developed by the case law. To cite one example, in Doe, this court states that the minor "testified that she is aware that an abortion poses medical risks, some of which are long-term and include the possibility that she could not bear children in the future. Acknowledging that her family's religion is Catholic, she testified that she has considered the religious and future emotional ramifications of her decision." 932 So.2d at 281. Referencing this testimony, this court concluded that the minor's "understanding of her circumstances is manifest in her appreciation that there are medical risks associated with the procedure, as well as religious and emotional consequences." Id. at 284.
The minor's testimony in this case speaks to none of these issues, all of which are central to the court's determination of whether a minor is sufficiently mature to make this decision without the advice and guidance of a parent. Clear and convincing evidence is an "intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." In re Davey, 645 So.2d 398, 404 (Fla.1998). The quantity and quality of the minor's evidence pertaining to maturity was substantially inferior to the evidence described in Doe, and it is this difference, among others, that distinguishes this case from Doe.
WHATLEY, SALCINES, STRINGER, CANADY, and LaROSE, JJ., Concur.
*563 NORTHCUTT, Chief Judge, dissenting.
I must preface these remarks with praise for all thirteen of my colleagues, who cast their votes for and against reconsidering this case en banc after a lengthy and vigorous, but never uncivil, face-to-face debate. When we conferenced on the motion the vote was 7-7, and the motion for rehearing en banc failed for lack of a majority. After we released our initial order, one judge changed his mind and sought to withdraw his vote in favor of the motion. Ultimately, then, the vote was 8-6 to deny the motion.
I mention this because, just as questions of abortion rights divide our society on moral and religious grounds, judges who must decide such difficult issues also hold widely differing personal convictions. Our judicial duties require us nevertheless to set aside our private beliefs and to rule on these questions impartially, according to the cold neutrality of the law. See State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613, 615 (Fla.1939). Having participated in the debate on the motion for rehearing en banc, I can attest that this important precept was observed in this case by the able judges who took part in the panel decision and by all who voted for or against revisiting it.
I am also heartened by Judge Casanueva's observation, in his opinion concurring in the denial of rehearing en banc, that this young woman may yet commence another bypass proceeding by filing a new petition. I share Judge Casanueva's view that she may do so. Just the same, the law requires a reversal in this case. The panel decision to affirm is at odds with the decisional law of this court and others, and it compromises important protections against the arbitrary denial of a minor's rights. As such, it unduly and severely undermines the ability of this petitioner or any other to obtain a judicial waiver of the parental notification requirement, whether she is proceeding on her initial petition or a subsequent one.
In this case the acting circuit judge was improperly influenced by nonrecord personal considerations, revealed by his remarks at the hearing; he violated the law by failing to rule on one of the statutory grounds alleged in the petition within 48 hours of its filing; and he violated the law by failing to issue an order that contained specific factual findings and legal conclusions in support of the one inadequate ruling that he did make. The panel's decision to affirm stems from its misunderstanding of the significance of the judge's personal remarks and from its unprecedented refusal to enforce important statutory mandates. The determination to excuse these violations of law could not be justified by the panel's independent assessment of the evidence and its imposition of an evidentiary burden so onerous that it would foment arbitrariness in the application of the judicial bypass statute.
Any discussion of these issues must begin with the legal premise that a minor possesses a constitutional right to terminate her pregnancy. See Hodgson v. Minnesota, 497 U.S. 417, 435, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990); Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); In re T.W., 551 So.2d 1186, 1194-95 (Fla.1989). Florida's legislature has imposed a condition on the exercise of this right in section 390.01114(3)(a), Florida Statutes (2006), which requires a physician to notify a minor's parent or legal guardian at least 48 hours before performing an abortion on the minor. § 390.01114(3)(a). The statute excuses the notice requirement under five circumstances, one of them being that the minor has successfully petitioned a circuit court to waive it. § 390.01114(3)(b)(5). This type of "judicial *564 bypass" provision has been deemed necessary to the constitutionality of statutes that burden the abortion rights of minors. See, e.g., Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (construing statute requiring parental consent to minor's abortion); Lambert v. Wicklund, 520 U.S. 292, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) (construing parental notice statute under Bellotti standards); Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502, 510-11, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990); Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller, 934 F.2d 1462 (11th Cir.1991) (upholding Georgia's parental notification statute as satisfying Bellotti criteria).
Under the statute, the court must grant a judicial bypass if it finds (1) by clear and convincing evidence, that the minor "is sufficiently mature to decide whether to terminate her pregnancy"; (2) by a preponderance of the evidence, that there "is evidence of child abuse or sexual abuse of the petitioner by one or both of her parents or her legal guardian"; or (3) by a preponderance of the evidence, that "the notification of a parent or guardian is not in the best interest of the petitioner." § 390.01114(4)(c), (d). If the court does not find that any of these conditions have been met, it must dismiss the petition. Id. The statute further provides that, unless the minor requests an extension, the petition will be deemed granted if the court does not rule on it and issue written findings of fact and conclusions of law within 48 hours of its filing. § 390.01114(4)(b).
Importantly, the statute mandates that a court conducting a judicial bypass proceeding must provide for a written transcript and that its order must contain "specific factual findings and legal conclusions supporting its decision." § 390.01114(4)(e). As explained in this court's one prior opinion addressing this law, In re Doe, 932 So.2d 278, 282 (Fla. 2d DCA 2005), these requirements protect against the danger that the judge's decision to grant or dismiss the minor's petitioner will be influenced by impermissible considerations. See also In re T.W., 543 So.2d 837, 841 (Fla. 5th DCA) (holding that statute requiring parental consent to minor's abortion was unconstitutional in part because its judicial bypass provision lacked procedural safeguards to avoid the "clear danger that trial judges will render a decision on the basis of their own moral, religious or political beliefs"), approved, 551 So.2d 1186 (Fla.1989).
Unfortunately, that danger was realized in this case. In the hearing below, the judge made the following remarks:
THE COURT: You know your mother and father, especially your mother, are going to know that you are pregnant. And if she sees you, she will know. Major things happen to your body when you get pregnant, even if you have an abortion.
Later in the hearing:
[COUNSEL]: . . . I think the procedure that the petitioner wants to undergo would certainly cause some great distress between the parents and the petitioner.
THE COURT: Greater distress can occur; "Catholic parents found out that she had committed an abortion."
[COUNSEL]: Well, Your Honor
THE COURT: Considering that is one of the biggest things of the Catholic faith, regarding what they believe should never be done.
. . . .
[COUNSEL]: And Your Honor, the Petitioner is trying toshe respects her parents and respects her religion to the extent that she wants to follow that religion. But again, you know, it is a choice *565 that she is entitled to make under the statute, if the Court finds that she is of sufficient maturity or that it is not in her best interest. It is a difficult choice. I have no doubt.
THE COURT: No, Ilisten, I understand this. I have two daughters and one of my daughters is adopted. And it was a single girl. Facts were, she was just out of high school and in her first year in college, and that is all that I know. But, I often wondered, what if she decided to do something different.
[COUNSEL]: Right.
Finally:
THE COURT: Miss, I know this seems like the most terrible thing in the world. And, I will tell you, as I indicated, a father of two daughters, and I want you to know that I am Catholic. And, I have always told my daughters, whatever it is, you can discuss it with me. And at a certain point, I will also tell you, that I have always told them, regardless of what I might think, if something happened to you, that would be your decision and whatever decision you make, I will support you.
I'm not telling you that you can or cannot terminate that pregnancy. I just think, in your best interest, where you are going to have to go through with it with your parents, it would be best for you to notify your parents. And, I am sure they love you.
The judge was charged with determining whether the law permits this petitioner to exercise her constitutional right to terminate her pregnancy without first notifying her parents. She was entitled to have him make that determination as an impartial, neutral judicial officer, based solely on the evidence before him. Instead, the judge cast himself in the role of the young woman's parents and speculated about how upset they would be upon learning that their daughter had "committed an abortion." He discussed his own religious affiliation and personal history and mused about what would have happened if the young birth mother of his adopted daughter had "decided to do something different." With no evidence to support him and despite his own observation that, as Catholics, the young woman's parents would be highly upset to discover that she had terminated her pregnancythe judge speculated that if they were notified of her intention to do so beforehand, they would react with the same understanding and give her the same support that the judge had promised his own daughters.
The panel should not have countenanced this behavior. Indeed, this judge's remarks were far more egregious than those of the judge who denied the bypass petition in In re Doe, 924 So.2d 935 (Fla. 1st DCA 2006). In that case, the judge declared that "[t]he Court must use its own background and life experiences to weigh and evaluate the testimony" and noted that the court "has four children of its own and once was a seventeen year old himself." Id. at 940. The First District reversed. "Courts in judicial bypass cases are constrained to consider only the record in making a decision," it wrote. Id.
A circuit court can arrive at its conclusion on the issue of waiver of parental notification only from the matters presented at the hearing and not from matters of personal knowledge. Based upon the court's statements in its order, the circuit court was obviously influenced by matters outside the record. As such, its conclusions were in error.
Id.
In this case, the panel rejected the petitioner's assertion that the judge based his decision on his personal views rather than facts in evidence, declaring, remarkably, *566 that this complaint was "unsupported by the record." In re Doe, 33 Fla. L. Weekly D152, D153 (Fla. 2d DCA Jan.4, 2008). Although conceding that the judge made remarks reflecting his personal attitudes regarding abortion "by implication," the panel posited that "read in context, it is evident that the judge understood that the sole question he was to decide was whether the minor's parents should be notified, not whether the minor should have an abortion." Id. at D153.
It is impossible to imagine a context in which it would be appropriate for a judge to make the above-quoted statements in a judicial bypass hearing. Be that as it may, the panel missed two important points. First, although the judge understood that the legal question before him was not whether the petitioner should terminate her pregnancy, this is hardly a basis for concluding that the judge's very evident personal feelings on that topic did not influence his decision. Indeed, second, the judge's statements expressly confirmed that he was influenced by outside considerations when ruling on a matter directly at issue, i.e., whether or not it was in the young woman's best interest to notify her parents before terminating her pregnancy:
THE COURT: Miss, I know this seems like the most terrible thing in the world. And, I will tell you, as I indicated, a father of two daughters, and I want you to know that I am Catholic, And, I have always told my daughters, whatever it is, you can discuss it with me. And at a certain point, I will also tell you, that I have always, told them, regardless of what I might think, if something happened to you, that would be your decision and whatever decision you make, I will support you. I'm not telling you that you can or cannot terminate that pregnancy. I just think, in your best interest, where you are going to have to go through with it with your parents, it would be best for you to notify your parents. And, I am sure they love you.
Even if the judge had otherwise kept his thoughts to himself, these remarks by themselves warranted a reversal.
The judge's decision must also be reversed for his failure to abide by the statutory requirement that the court's written order contain "specific factual findings and legal conclusions supporting its decision." § 390.01114(4)(e). The judge employed a form order prescribed by Florida Rule of Juvenile Procedure 8.991. The form language of the order stated: "The minor has not proven by sufficient evidence any of the criteria that would permit a judicial waiver of the parental notification requirement of Section 390.01114(3), Florida Statutes, for the following reasons:. . . ." Beneath this printed passage the judge wrote in his own hand, simply: "Based on testimony of Petitioner the Court believes the request is for expediency and not in best interest of Petitioner."
This order was plainly inadequate. Obviously, it made no reference whatever to the petitioner's allegation that she is sufficiently mature to decide whether to terminate her pregnancy. See In re Doe, 921 So.2d 753, 757 (Fla. 1st DCA 2006) ("[I]t is imperative that the trial court's order address all of the grounds for relief pled by the petitioner. . . ."). The judge's belief that the petitioner's request was "for expediency" was irrelevant and merely begged the question; all requests for waivers of parental notification are for expedience in one way or another. Finally, the conclusory assertion that a waiver would not be in the young woman's best interest was not founded on specific factual findings as required by the statute: In short, as a matter of law the order did not support the petition's dismissal. See In re E.B.L., 544 *567 So.2d 333, 335 (Fla. 2d DCA 1989) (holding, in proceeding for judicial bypass of statute requiring minor to have parental consent before obtaining an abortion, order reciting that minor was not sufficiently mature to give informed consent to the procedure and that it was not in minor's best interest to obtain abortion without prior parental consent failed to satisfy rule mandating that the order "shall recite findings in support of the ruling").
The significance of this statutory violation cannot be overstated. By requiring a judge to put his reasoning in writing, the statute subjects his decision to scrutiny for logic and justification based on competent, substantial evidence in the record. Thus, the requirement is an essential protection against judicial arbitrariness and bias based on the judge's personal convictions or other nonrecord considerations. See Doe, 932 So.2d at 282 (Fla. 2d DCA 2005).
The panel opinion did not dispute the clear inadequacy of the judge's order. But, after reviewing the record, it excused this failing because, it said, it agreed with the judge's conclusion that the petitioner's evidence was legally insufficient. There are several flaws in this reasoning, one of the most glaring of which is that the judge did not rule that the evidence was legally insufficient. The purported "finding" with which the panel agreed was, in fact, part of the form language prescribed by rule 8.991, stating that "[t]he minor has not proven by sufficient evidence any of the criteria that would permit a judicial waiver of the parental notification requirement" of the statute. The panel ignored that this part of the form concluded with the phrase "for the following reasons:. . . ." When setting forth the reasons called for by the form and required by the statute, the judge did not hold that the evidence was legally insufficient.
Second, the panel assumed that a noncompliant order can be excused based on an appellate court's independent review of the record. This is more troubling because it undermines the purpose Of the requirement that a judge expressly set forth his reasoning. Appellate courts cannot guard against the influence of improper considerations by poring over a record that may or may not support the order as "right for the wrong reason." And, indeed, in no other reported Florida judicial bypass case has an appellate court failed to reverse an order that did not comply with the statute. See Doe, 932 So.2d 278 (Fla. 2d DCA 2005); see also In re Doe, 943 So.2d 806 (Fla. 4th DCA 2006); Doe, 921 So.2d 753 (Fla. 1st DCA 2006). As this court observed in E.B.L., 544 So.2d at 336:
It is our obligation to review the actions of trial courts to assure their compliance with the requirements of the law. Even when the trial judge is an experienced and able jurist, as in this case, we cannot affirm legal decisions which lack factual findings expressly required by the rules of procedure to allow for meaningful review.
Moreover, the judge's total failure to rule on one of the grounds alleged in the bypass petition violated the 48-hour deadline imposed by law. The statute is clear:
Court proceedings under this subsection must be given precedence over other pending matters to the extent necessary to ensure that the court reaches a decision promptly. The court shall rule, and issue written findings of fact and conclusions of law, within 48 hours after the petition is filed, except that the 48-hour limitation may be extended at the request of the minor. If the court fails to rule within the 48-hour period and an extension has not been requested, *568 the petition is granted, and the notice requirement is waived.

§ 390.01114(b) (emphases supplied).
Thus, upon the judge's failure to rule within 48 hours, the statute automatically waives the notice requirement regardless of the quality or quantity of the evidence, if any, that has been presented by the petitioner. The legislative directive for the prompt resolution of these claims is incompatible with the notion that a judge may avoid the deadline simply by ignoring a statutory ground alleged in the bypass petition and leaving it to the appellate court to fill in the blanks after independently combing the record and assessing the evidence for the first time. See Doe, 943 So.2d at 806 (Fla. 4th DCA 2006) (reversing for failure to issue specific factual findings and legal conclusions supporting dismissal of petition and noting that trial court's conclusory finding on minor's maturity provided no basis for meaningful review and amounted to failure to rule within statutorily mandated 48-hour period).
In light of the statutory requirements, the panel's endeavor to make an initial determination of an issue that was omitted from the trial judge's order was misguided. As will be discussed shortly, the evidence at the hearing and the judge's assessment of the young woman's demeanor may well have convinced him that she was sufficiently mature to decide whether to terminate her pregnancy.[12] But the judge's failure to address this issue in his order suggests the possibility that he mistakenly thought that in order to obtain a judicial bypass the petitioner was required to prove both that she was sufficiently mature and that notifying her parents would not be in her best interest. We cannot be certain of this because the judge did not comply with the statutory directive to specifically set out his legal conclusions in his order. But there is no other logical reason why the order dismissing the petition mentioned only one of the statutory grounds alleged in the petition and omitted any reference to the other. The judge must have believed that his rejection of just one ground required him to dismiss the petition.
If that is the case, the panel's excusal of the statutory requirements based on its own review of the transcript has done this young woman a potentially life-altering disservice, for if the judge had dismissed the petition based on a written finding that she proved only her maturity allegation, the appellate, court would have been compelled to accept the finding of fact but to reverse the dismissal and order the petition granted. On the other hand, if the judge simply did not reach a conclusion about the maturity issue, the panel's de novo consideration was the first time it was addressed-long after the 48-hour period specified in the statute.
Again, we cannot know which version is accurate because the judge did not comply with the statute. But given the very existence of the directive that the petition shall be deemed granted if within 48 hours the judge does not rule by written order specifying his factual findings and legal reasoning regardless of whether the petitioner has sufficiently proved her entitlement, we *569 can be certain that the legislature did not intend for the petition to be dismissed based on the speculative ability of an appellate court to fill in the blanks after the fact.
The panel was mistaken to cite this court's 2005 decision in Doe, 932 So.2d 278, in support of the proposition that a de novo examination of the record was an acceptable substitute for a proper ruling and order by the trial judge. Doe held no such thing. Rather, in that case we enforced the statute and reversed the dismissal order because it did not comply with the statutory directive to set forth specific findings in support of the ruling. Indeed the Doe opinion emphasized that, as an appellate court, we were not in a position to make findings of fact based on a written record. Id. at 284, 286. See also Doe, 921 So.2d at 756 (Fla. 1st DCA 2006) (noting that the trial court omitted findings of fact and stating that "we are not in a position to supply those findings.").
In Doe we reversed because the circuit court's order was inadequate, and we explained why we did not then remand to give the court an opportunity to fashion an acceptable order, as is commonly done in other kinds of cases. First, we observed that a remand for findings would contravene the mandate that a circuit court rule on a bypass petition and issue written findings within 48 hours of the petition's filing. Doe, 932 So.2d at 283 (Fla. 2d DCA 2005). "The legislative concern for speed and efficiency is so important that it is permitted to trump all other considerations contained in the bypass provision. Hence, the statute provides that if the circuit court does not rule on a waiver petition within 48 hours, it is deemed granted." Id. (citations omitted). We supported that passage with a citation to the First District's decision in In re A.S., 909 So.2d 524 (Fla. 1st DCA 2005), in which it was held that the 48-hour period had expired and that the bypass petition was deemed granted after the circuit court held a hearing on the petition and dismissed it without prejudice to amend or supplement it. Obviously, then, under the statute the deadline applies even if the judge considers the petition or evidence to be legally deficient.[13]Cf. In re Jane Doe 06-C, 948 So.2d 30, 33 (Fla. 1st DCA 2006) (reversing dismissal of bypass petition because trial court erroneously disqualified the petitioner's counsel, and holding that the case could not be remanded for a new hearing because a remand would violate the time limits specified in section 390.01114).
In Doe our second reason for declining to remand for entry of a proper order"at the expense of the strict time deadlines set forth in the statute and appellate, rule . . . assuming, arguendo, that we would even be authorized to do so"was that the record before the circuit court was not likely to yield findings sufficient to justify dismissing the bypass petition in any event. Doe, 932 So.2d at 285 (Fla. 2d DCA 2005). This was because all of the evidence presented at the hearing supported granting the bypass, and none of the matters revealed in the record weighed in favor of denying it. Id. at 284-87.
In sum, in Doe we reversed the order solely because it did not comply with the statute. We declined to remand for entry of a proper order because we doubted our authority to do so in light of the statutory and procedural time limitations and, in any *570 case, the record would not have supported dismissal of the bypass petition. We did not hold that a fatally inadequate order, such as the one under consideration in this case, can ever be excused. Until the panel decision in this case, no Florida court had held as much.[14]
Finally, having decided that its own examination of the printed transcript would suffice in lieu of a proper legal order from the trial judge, the panel claimed that the record was "devoid of any factual basis" upon which the judge could have granted a bypass. 33 Fla. L. Weekly at D154. This was simply wrong.
On the question of the petitioner's maturitywhich the judge did not bother to address either at the hearing or in his orderthe panel supported its assertion syllogistically by quoting from cases that recite "nonexhaustive" lists of factors that can bear on a minor's maturity level, then focusing on factors that the panel members felt were not sufficiently addressed in the evidence. In so doing the panel ignored the obvious truth that the presence or absence of any of those factors is not determinative.
Thus, for example, in In re Doe, 967 So.2d 1017 (Fla. 4th DCA 2007), the Fourth District rejected the trial judge's finding that the petitioner was not mature enough to determine whether to terminate her pregnancy based in part on the fact that she had not yet spoken to any medical experts. "Although a minor's consultation with experts concerning the risks and ramifications of an abortion is a positive indication of maturity, it is only one factor among many in the statutorily-mandated analysis." Id. at 1019. As to that factor, the court quoted the First District's comments regarding a minor who had petitioned for a judicial bypass:
That she had not yet at the time of the hearing personally discussed the ramifications of a termination of pregnancy with medical professionals does not distinguish her from many other similarly situated women, both minors and adults, and any suggestion by the trial court that she is unable to determine or understand the potential risks and ramifications is without support in the record.
Id. at 1019 (quoting Doe, 921 So.2d at 756 (Fla. 1st DCA 2006)).[15]
The same is true of all of the factors the panel found wanting in this case. The alleged absence of proof on those matters did not mean that this young woman could not be found to be sufficiently mature to determine whether to terminate her pregnancy based on the proof that she did *571 submit. Indeed, the panel opinion itself contradicted its own assertion. Thus, for example, on the maturity issue it recited that
[s]imilarly, another court has stated that when evaluating maturity, pertinent factors include, but are not limited to, the minor's physical age, her understanding of the medical risks associated with the procedure as well as emotional consequences, her consideration of options other than abortion, her future educational and life plans, her involvement in civic activities, any employment, her demeanor and her seeking advice or emotional support from an adult. In re Doe, 924 So.2d 935, 939 (Fla. 1st DCA 2006).
33 Fla. L. Weekly at D153. There are eight factors listed in that passage. The record in this case included evidence of five of them:
Physical age: Unlike that of, say, a thirteen- or fourteen-year-old child's, this young woman's disability of nonage was very near its end. At the time of the hearing she was just four months shy of her eighteenth birthday, an age at which she may engage in virtually all lawful activities other than drinking alcohol or serving as president of the United States. See § 562.11, Fla. Stat. (2006) (making it unlawful to sell, give, or serve alcoholic beverages to a person under twenty-one years of age, or to permit a person under twenty-one years of age to consume such beverages); Art. II, § 1, cl. 4, U.S. Const. (providing that no person shall serve as president who has not attained the age of thirty-five years).[16]
Consideration of other options: The petitioner testified that her decision had been a difficult one, to which she had given long and thoughtful consideration. This included consideration of keeping the child and the impact this would have on her family life, her current education, and her future plans. The panel dismissed this evidence: "The minor responded affirmatively to her attorney's conclusory questions regarding whether she had thoughtfully considered alternatives to having an abortion. However, because she did not elaborate it is impossible to evaluate what alternatives she considered, how she weighed those alternatives, or how she arrived at her decision." 33 Fla. L. Weekly at D153.
That description was not entirely accurate; the petitioner testified directly about some of these specific topics. For example, she recognized that if she continued with her pregnancy she would be transferred out of her high school to a facility for pregnant students, which the judge identified as "the pregnant girls school at D.W. Waters." She testified that she and the father had discussed the difficulty she would have moving forward in her life, attending college and trying to balance the demands of school, work, and child-rearing. But even if she had merely and only responded to "conclusory" questions posed by her attorney, her answers were testimony nevertheless. They reflected perfectly reasonable, mature considerations, and they constituted evidence on this factor that the judge was entitled to credit and that the panel was not entitled to arbitrarily ignore. Cf. Doe, 967 So.2d at 1020 (Fla. 4th DCA 2007) (describing the petitioner's maturity and noting that "she realized how difficult it would be to raise a child while going to school.").
*572 Education and life plans: The petitioner was a senior in high school with good-average grades. (She made As, Bs and Cs, which she characterized as "average.") Her educational plan was to attend community college for two years and then transfer to a university. She hoped to major in the health care field, studying either pharmaceuticals or pediatrics. Thus, she had given thought to her future and she had developed specific educational and professional aspirations. See Doe, 921 So.2d at 754, 756 (Fla. 1st DCA 2006) (finding that the petitioner was mature and noting that she had "formulated a plan for her future" based on her testimony that she intended to attend college and become a teacher or a guidance counselor).
Employment: She had been employed at two restaurants over the previous one and a half years, working "at least" twenty to twenty-five hours per week while attending school. The panel opinion quibbled with this evidence as well: "she works but she gave no indication as to what her job involves. . . ." 33 Fla. L. Weekly at D153.
Demeanor: The young woman's demeanor was certainly apparent at the hearing. Tellingly, the judgecharged by law with detailing his reasons for dismissing the bypass petitiondid not comment that this factor contributed to his decision. See Doe, 932 So.2d at 285 (Fla. 2d DCA 2005). The panel opinion did not mention it, either. It couldn't, of course, even though several of the cases it cited on the maturity issue describe this as one of the most important considerations. On this basis alone, the panel's claim that the record is devoid of evidence that the petitioner is sufficiently mature to determine whether to terminate her pregnancy was unwarranted.
In addition to the foregoing, the testimony disclosed that the petitioner and her partner had used condoms. And notwithstanding the objections of her mother, she had taken it upon herself to visit a health clinic to obtain birth control pills. Thus, the record reflects that she had not been cavalier, about contraception; to the contrary, she had endeavored to attend to it in a responsible fashion, even in the face of parental resistance. It was in that process that her pregnancy was discovered. She advised the father of the pregnancy and discussed the alternatives with him. When he declined to assist her, she made plans to pay for the termination herself.
It must be remembered that this young woman was not required to prove that she possessed the maturity of an adult. Doe, 932 So.2d at 284 (Fla. 2d DCA 2005); In re Jane Doe 06-A, 932 So.2d 499, 500 (Fla. 1st DCA 2006); Doe, 924 So.2d at 939 (Fla. 1st DCA 2006). Nor was it incumbent on her to show, as the panel's opinion seemed to imply, that she was especially accomplished or precocious for a seventeen-year-old. Four months shy of legal adulthood, she had the constitutional right to terminate her pregnancy. See Hodgson, 497 U.S. at 435; Planned Parenthood, 428 U.S. at 75; T.W., 551 So.2d at 1194-95. To do so without first informing her parents, she was charged only with demonstrating that she was sufficiently mature to make the decision. All of the foregoing factors, plainly evident at the hearing, are hallmarks of maturity. They amply supported a finding that this young woman is mature enough to make this decision for herself.
The panel's contrary assertion, unsupported even by a finding from the judge who heard the evidence, eviscerates the judicial bypass remedy. It authorizes trial and appellate judges to pick and choose from among the myriad "nonexhaustive" lists of factors that have been identified as possibly bearing on a person's maturity *573 and to declare that the petitioner's failure to prove one or another renders all other evidence of her maturity legally insufficient. Thus, for example, the fact that a petitioner had worked part-time for a year and a half while attending high school could be given no weight if she did not also prove that her job responsibilities were sufficiently impressive.
I acknowledge that the record does not contain a great deal of evidence bearing on the other ground in the petition, that it would not be in the petitioner's best interest to give her parents advance notice that she was terminating her pregnancy. But the judge's improper and openly argumentative personal assertions likely would have intimidated most adultsindeed, most attorneys. It is not difficult to imagine the chilling effect that his behavior had on this young woman's ability to elaborate on her situation.
Still, even as it was, her evidence did not prove merely that she had a "generalized fear" of telling her parents of her plan, as the panel opinion suggested. 33 Fla. L. Weekly at D153. To the contrary, the evidence disclosed specific reasons for her concern. Not quite finished with her secondary schooling, she lived in her parents' home. The family actively practiced Catholicism: they attended church every. Sunday; the petitioner's mother opposed her efforts to obtain birth control pills.
The judge himself emphasized the importance of the parents' religious faith when predicting their response to their daughter's decision to terminate her pregnancy:
THE COURT: Greater distress can occur; "Catholic parents found out that she had committed an abortion."
[COUNSEL]: Well, Your Honor
THE COURT: Considering that is one of the biggest things of the Catholic faith, regarding what they believe should never be done.
Given the likely reaction of the petitioner's parentswith whom she was living at a time when she had only a part-time job and had not yet completed the high school education upon which all of her future plans dependedan unbiased fact finder certainly could conclude that informing them of her intention to terminate her pregnancy was not in her best interest. See Doe, 932 So.2d at 286 (Fla. 2d DCA 2005).
In sum, the panel disregarded the judge's expressed reliance on his personal history and attitudes when dismissing the petition, disregarded the judge's violation of the statutory deadline for ruling, and disregarded the judge's violation of the statute requiring him to make specific findings in support of his ruling. The panel's decision to affirm notwithstanding these errors was unprecedented. It was founded on the panel's misconstruction of the record and its adoption of an evidentiary standard that virtually no petitioner could ever meet.
If the panel decision were truly the prevailing law, the result would be a judicial shell game that invites improper influences in bypass proceedings. With the decision in hand, a judge who was improperly predisposed to dismiss every bypass petition regardless of the evidence would be free to do so with impunity. He could even dismiss a petition summarily, in direct violation of his statutory obligation, without specifying his reasons or even ruling on all the grounds alleged. And in doing so he could be confident that he would not be reversed. The appellate court would review the record de novo, find or devise some isolated factor bearing on the petitioner's maturity or best interest that her evidence failed to address (or failed to address in enough detail), and on *574 that basis declare that the judge did not abuse his discretion and that his violations of law caused no harm.[17]
Again, I emphasize that I do not question the good faith or abilities of the panel members or, for that matter, of the trial judge. Each of them was duty-bound to grapple with a painfully sensitive subject, involving a delicate and carefully crafted statutory balance between a young woman's right to self-determination and society's interest in ensuring her welfare, while under severe time constraints. But I have had more time in which to ponder the matter, and I cannot fathom a decision that so undermines the viability of the judicial bypass remedy as to render it illusory.
FULMER, J., Concurs.
ALTENBERND, J., Dissenting.
Although I vote to rehear this case en banc, I agree with Judge Casanueva's conclusion in section V of his concurring opinion. I agree with a number of Chief Judge Northcutt's observations including his praise for the level of collegiality demonstrated by the members of this court during our lengthy debate on these issues. I would emphasize that I merely vote to reconsider this case en banc, and have not decided how I would actually rule on the merits of the case.
The trial court did not make the factual findings mandated by the legislature in section 390.01114(4)(e). All judges on this court appear to agree that the trial court erred in that regard. The panel decision concluded that this error did not warrant reversal because, despite the trial court's error, this appellate court could determine that the record did not contain competent, substantial evidence from which a trial judge could decide, under the clear and convincing standard, that this seventeen-year-old petitioner was "sufficiently mature to decide whether to terminate her pregnancy." § 390.01114(4)(c).
The legislature has mandated that the trial court determine whether the petitioner is "sufficiently mature" to decide. Maturity is often evidenced by demeanor, composure, tone of voice, and body language. I appreciate the panel's observation and that of Judge Casanueva that the evidence presented at this short hearing was limited. However, in the absence of findings of fact, I am very troubled by the panel's ruling that an appellate court can decide as a matter of law that a trial judge would have been precluded from determining this evidence to be sufficient evidence of maturity when the appellate court cannot review demeanor, composure, tone of voice, and body language.
Similarly, I question whether the transcript does full justice to the comments made by the trial judge at the conclusion of the petitioner's testimony. A transcript does not reflect the judge's demeanor. Arguably, the comments were made in an effort to help the petitioner better understand a parent's viewpoint and to help her appreciate that she might benefit from her parents' knowledge, support, and counsel in the long run.
The statute in this case clearly and unambiguously requires the trial court to determine whether the petitioner is "sufficiently *575 mature" to decide. It does not require the trial court to determine that the decision is a "mature decision," or even that the petitioner's decision-making process satisfies some specific set of criteria. There is wisdom in this statute because assessing whether a person has made a mature decision on an issue like abortion is far more complex and perhaps subjective than deciding simply whether a teenager is "sufficiently mature to decide." Although "maturity to decide" and "mature decision" are admittedly related concepts, a petitioner may prove maturity without necessarily revealing all private aspects of her decision to seek an abortion.
I see nothing in the record to indicate that the trial judge applied the correct legal standard enunciated in section 390.01114(4)(c) or that he understood that the petitioner's maturity was the critical issue that he needed to decide. In my mind, the panel decision also misses this distinction and seems to require proof about the decision-making process rather, than proof of maturity. I am concerned that the panel decision may be requiring the petitioner to prove elements beyond those required by the statute. If the issue is "maturity to decide," then it would seem to rest heavily upon factors of demeanor and matters that cannot be gleaned from an appellate record in the absence of findings by the trial judge.
I am troubled by the suggestion that any reversal by this court must mandate the petitioner's right to an immediate abortion without notification to her parents. If a trial court makes a procedural error, as in this case, there would often be time for the trial court to perform its role properly. It may be, however, that the existing statute and rules of procedure limit our powers of mandate in this situation. An en banc proceeding would have given this court more opportunity to explore the scope of our powers when issuing a mandate in such a case.
Unlike Judge Casanueva, I conclude that the panel's interpretation of this statutory language and the power it gave to the appellate court to review the evidence in the absence of findings are rulings that render this a case of exceptional importance. These rulings will affect many future litigants in highly expedited proceedings involving issues of constitutional dimension. Thus, I conclude that the case warrants en banc consideration.
SILBERMAN, J., Dissenting.
I concur in the dissenting opinion of Judge Altenbernd, although I share the concerns expressed by others as to the trial court's ill-advised comments, even if well-intentioned.
VILLANTI, J., Dissenting.
Based upon the en banc vote failing, further debate is essentially a rhetorical exercise, but it does serve to demonstrate the potential value of going en banc had the motion passed. As reflected in the closely split vote, reasonable people can legitimately disagree on whether the question presented warrants en banc consideration and on what result the law, as written, requires. I write briefly to address two issues.
First, my vote to go en banc merely reflects my preliminary understanding of the law and in no way reflects any personal view of the underlying subject. As judges, none of us is permitted the luxury of actively infusing a personal view to skew a result legally required by state legislation. It is for this reason that I concur in Judge Northcutt's assessment that the trial court's paternalistic commentary, however well intended, was wholly inappropriate. Although these comments may have been made after the trial judge ruled, it is *576 clear to me that they reflected a predisposed personal bias that precipitated his ruling. The timing of his comments does not change the fact that the judge was required to recuse himself, even in the absence of a motion, when his personal opinions and experiences were appearing to drive his decision.[18] Chapter 390, while containing a nonexclusive list of factors for the court to consider, certainly did not intend for the judge to base his ruling on his personal beliefs.
Second, I do not solely fault the trial judge for making the inadequate findings; the "system" that facilitated this occurrence was also inadequate. Clearly, the form order used was of little or no value. In fact, its presence likely contributed to the judge being lulled into a false sense of security, believing if he used the approved form order, this was all he was required to do. As this case proves, form orders are usually so sketchy that their application is fraught with peril. Had the form order clearly required the trial court to make specific findings of fact on each of the various statutory factors, then the participants in this drama would have been hard pressed to inadvertently avoid addressing some of the statutory factors and there would be far less left to debate on appeal.
NOTES
[1] In fact, if the few circumstances detailed in the minor's testimony are sufficient in themselves to justify granting a judicial waiver then virtually no minor could ever be denied one.
[1] I note for the benefit of the lay public that the trial judge's decision and the decision of this court do not preclude Ms. Doe from terminating her pregnancy. These decisions only mean that she has not presented sufficient evidence to grant this petition to waive parental notification. Whether she may still benefit front the waiver of notification provisions of the statute is not decided. See discussion infra Part V.
[2] "The en banc decision shall be by a majority of the active judges actually participating and voting on the case. In the event of a tie vote, the panel decision of the district court shall stand as the decision of the court." Fla. R.App. P. 9.331(a).
[3] I take this opportunity to commend appellate counsel for the quality of the pleadings filed with this court, especially when one considers that the pleadings were prepared on an expedited basis. Unfortunately, the shortcomings in this case that mandated affirmance by the panel all appeared in the trial court.
[4] Based on the record before this court, the pleadings, and the brief filed on her behalf, there is little dispute that Ms. Doe failed to carry her burden of proof under subsection 4(d). Therefore, my discussion will be limited to her showing under subsection (4)(c), the "sufficiently mature" basis entitling the minor to a judicial by-pass.
[5] Section 390.01114(4)(e) provides, "the trial court shall hear evidence relating to the emotional development, maturity, intellect, and understanding of the minor, and all other relevant evidence." These are examples of the important factors the legislature has outlined by which the minor may provide factual evidence to sufficiently demonstrate her maturity and therefore meet the statutorily mandated burden.
[6] A careful review of the transcript shows that Judge Palomino mentioned his personal circumstances only after Ms. Doe responded "No" when specifically asked by her attorney if "there was anything else [she] wanted to tell the judge." Further scrutiny of the appellate record fails to reveal any challenge to the judge's comments by Ms. Doe's trial counsel.
[7] A singe-petition rule has recently been found to be facially unconstitutional in federal court. In Cincinnati Women's Services, Inc. v. Taft, 468 F.3d 361(6th Cir.2006), the court held that an Ohio statute limiting a minor to a single petition unduly burdened a minor whose circumstances changed such that she would be able to meet requirements of demonstrating increased maturity or increased medical knowledge. Id. at 369-71. Although the Ohio statute dealt with parental consent rather than parental notification, its reasoning as to changed circumstances is persuasive.
[8] I note in Winston v. Winston, 684 So.2d 315, 319 (Fla. 4th DCA 1996), that nonadversarial proceedings can give rise to final judgments that are subject to res judicata (holding that a consent judgment stemming from an order issued by the court involving a transfer of funds between trusts was a final judgment subject to a "preclusive, res judicata effect").
[9] Section 59.041, Florida Statutes (2007), provides that "[n]o judgment shall be set aside or reversed . . . for error as to any matter of . . . procedure," unless it is apparent "that the error complained of has resulted in a miscarriage of justice."
[10] Section 390.01114(4) requires the trial court to rule and issue written findings of fact and conclusions of law within forty-eight hours after the petition is filed. It also provides that if "the court fails to rule within the forty-eight-hour period". the petition is granted. The trial court here ruled on the minor's petition within the forty-eight-hour period. It also issued its, written order with its findings and conclusions within the forty-eight-hour period. The trial judge, using a form approved by the supreme court, placed his initials in the appropriate place on the form to indicate his finding that the minor had failed to prove by sufficient evidence any of the criteria that permit a judicial waiver of the notification requirements of section 390.01114(3). The trial court follows that finding with his hand-written reasons for the finding. It is that reasoning that was challenged as inadequate.
[11] As in Doe, the trial court here did not suggest that the minor's demeanor had any bearing on its decision. Because the trial court in Doe was silent on the minor's demeanor, this court apparently dismissed the possibility that the minor's demeanor may have influenced the trial court's decision. In this case, the panel concluded that no matter what the trial court may have thought of the minor's demeanor it could not fill the gap left by her testimony.
[12] This is not simple speculation. The judge, who was quite vocal during the hearing, focused almost all of his questions and comments on the best interest issue. Only two of them arguably touched on the question of the petitioner's maturity: he asked the petitioner for the names of the restaurants where she worked, and he asked her if she had had any previous abortions. Unlike the members of this court's appellate panel, who could not observe the petitioner's demeanor at the hearing, apparently the trial judge felt no need to delve further into the maturity issue.
[13] Vis-à-vis Judge Casanueva's suggestion that the petitioner in this case may file a new bypass petition, it is important to note that a dismissal with leave to amend, which is not a final ruling in the case, differs from a dismissal without prejudice to filing a new action, which is a final order. See A.S., 909 So.2d at 525.
[14] That the panel misapplied this court's prior decision is evident from the similarity between the panel opinion and Judge Davis's dissenting opinion in Doe, 932 So.2d 278, 286-90 (Davis, J. dissenting). Whereas the panel in this case did not attempt to defend the statutory sufficiency of the dismissal order, in Doe Judge Davis opined that the circuit court's unelaborated conclusion that the petitioner did not prove her entitlement to a bypass under the statutory maturity test sufficed. Id. at 290. But he did so only after he selected various maturity factors from sundry case authorities and failed to find evidence of those specific factors in his independent review of the record. Id. at 288-90. Thus, he wrote, "[b]ased on my review of the record," he agreed with the dismissal and would have affirmed. Id. at 290. The panel in the instant case embraced Judge Davis's approach, which was not followed by the majority in Doe and has not been endorsed in any other Florida appellate decision.
[15] It is not the purpose of the parental notification statute to ensure that minors are apprised of the medical risks associated with terminating their pregnancies. That function is served by another statute that requires this information to be given to every woman, young or old, as part of her informed consent to a termination procedure. See § 390.0111(3), Fla. Stat. (2006).
[16] The simple and obvious fact that there is a substantial range in the ages of potential judicial bypass petitioners easily rebuts the panel's contention that if the evidence in this case could justify a waiver "then virtually no minor could ever be denied one." 33 Fla. L. Weekly at D154 n. 1.
[17] Of course, the panel decision in this case is not the prevailing law, even in the Second District. This court has now announced two decisions of equal force that apply very different governing principles in judicial bypass cases. Fortunately, the hypothetical judge described above could not know in advance which principles would be applied when this court reviewed his rulings, and that uncertainty might be enough to keep his improper motivations in check.
[18] Fla. R. Jud. Admin. 2.330(i). See also Hagan v. Sun Bank of Mid-Fla., N.A., 666 So.2d 580, 584 (Fla. 2d DCA 1996) (defining fundamental error in the context of a civil case as arising when the public's confidence in the justice system would be seriously weakened if the courts failed to give relief); Alamo Rent-A-Car v. Phillips, 613 So.2d 56 (Fla. 1st DCA 1992) (finding fundamental error in a civil case when the judge of compensation claims was acting as the trier of fact and his comments reflected a bias against one of the parties because that bias violated that party's due process right to a fair hearing).