924 So.2d 935 (2006)
In re Jane DOE, a minor.
No. 1D06-0489.
District Court of Appeal of Florida, First District.
April 5, 2006.
*936 Shelbi Day, Andrea Costello and Cassandra Capobianco, Gainesville; Randall C. Marshall, Miami, and Rebecca Harrison Steele, Tampa, of ACLU Foundation of Florida, Inc., for appellant.
PER CURIAM.
Jane Doe, a minor, appeals an order dismissing her petition for judicial waiver of parental notification of pregnancy. We previously reversed that order by unpublished *937 order and now write to explain our decision.
Section 390.01114, Florida Statutes (2005), the Parental Notice of Abortion Act, generally requires notification of the parents of a minor who seeks to terminate her pregnancy by the physician. The statute provides for judicial waiver of parental notice on three separate grounds. One, involving child abuse or sexual abuse of the minor by a parent, is inapplicable in this case.
Jane Doe filed her petition on January 25, 2006, seeking a waiver pursuant to section 390.01114(4)(c), which provides as follows:
If the court finds, by clear and convincing evidence, that the minor is sufficiently mature to decide whether to terminate her pregnancy, the court shall issue an order authorizing the minor to consent to the performance or inducement of a termination of pregnancy without the notification of a parent or guardian. If the court does not make the finding specified in this paragraph or paragraph (d), it must dismiss the petition.
Doe also relied on subsection (d), which provides in relevant part:
If the court finds, by a preponderance of the evidence, . . . that the notification of a parent or guardian is not in the best interest of the petitioner, the court shall issue an order authorizing the minor to consent to the performance or inducement of a termination of pregnancy without the notification of a parent or guardian.
At the hearing on the petition, Doe testified that she is 17 years old and lives with her mother and grandmother, who are her legal guardians. She is active in extra-curricular activities, including a pre-collegiate club, and volunteers for a local charity as well as a teaching assistant at a local elementary school. She stated that she has a high GPA and takes honors courses. Jane Doe testified that she plans to attend college to be a computer engineer or business manager. She is also involved in her church choir and with the church financial committee. She worked last summer full-time but does not work during the school year as her parents thought it would interfere with school. Doe stated that she does all the household chores.
Doe discovered that she was pregnant by taking two home pregnancy tests which were confirmed by a reproductive healthcare clinic. Upon learning of her pregnancy, Jane Doe discussed her situation with an adult at church. She stated that she wanted an abortion because the pregnancy would interfere with her schooling and also financially with her family. Doe testified that she was aware of the risks of abortion, having been counseled by the reproductive healthcare clinic.
Doe further stated that she was not ready to take care of a child right now. She knew other teenagers who have had a child in high school and has an understanding of the difficulties of raising a child under such circumstances. Doe did state that if she had to carry the pregnancy full-term, she would keep the child. However, if she did carry the pregnancy to term, she would not be financially able to go to college.
Jane Doe testified that she has a fair relationship with her grandmother: "we speak, talk about how our day was, but I don't have a relationship where I could tell her everything about my life and what's happening in my life." She stated that she also does not have a close relationship with her mother. Doe indicated that she did not wish to disclose her pregnancy to her parents because of "the way that I have heard them talk about how girls have been pregnant and how bad it looks for a young *938 age, and how they  how they have dealt with things in the past." Jane Doe argued that she feared that notifying her mother and grandmother would irreparably damage her relationship with them. She stated that she feared that "they will force her to leave their home, terminate financial and emotional support, and/or force her to carry the pregnancy to term."
Jane Doe further alleged that the pregnancy will bring embarrassment and shame to her grandmother, who is a prominent figure in the community. Jane Doe is financially dependent on her mother and grandmother until graduating high school. Therefore, notifying them "will jeopardize the self sufficiency and accomplishments she is working towards."
She testified that in the past when she tried to discuss boys with her parents, they reacted negatively. They have threatened to kick Doe out. Her mother has become upset and disappointed when Doe attempts to discuss boys or sex. Based on her past experiences, Jane Doe felt that they would tell her to leave the home. She further stated that she and the father have dated about three months and have talked of marriage, but she has no immediate plans to marry him.
The circuit court dismissed the petition. The court found that Doe had a stable home, which provides her with substantial financial, emotional and physical support. The court also found that Doe, in many ways, gave the appearance of being a "mature and responsible person," but that, based on her testimony and demeanor, she continued to live under the direction, guidance and security of her mother and grandmother. They provided for her everyday needs. While Doe was capable of making many of her own everyday decisions, the court found that she was not of sufficient age or maturity to make the crucial decisions in her life without the aid and counsel of her mother and grandmother.
The court found that Doe was not required to support herself or even contribute to her own support. Relying on Doe's appearance at the hearing, the court inferred that Doe was well provided for. Thus, the court held that Jane Doe failed to show by clear and convincing evidence that she was sufficiently mature to decide to terminate her pregnancy.
The court further found that Jane Doe failed to establish by a preponderance of the evidence that notification was not in her best interest. The court stated that it did not deduce from Jane Doe's testimony that her parents would completely stop support or remove her from their home. There was no evidence presented to show that they have provided anything but a loving and stable environment for Jane Doe's growth. The court also relied on Doe's testimony that she was not financially or emotionally ready to care for a child. The court indicated that these considerations also contributed to its finding that Doe lacked sufficient maturity to make the decision to terminate her pregnancy. The court further stated that Doe presented herself in a very confident and self-assured manner and that while testifying, Doe was highly appropriate and cognizant of the gravity of the proceedings.
The circuit court misinterpreted section 390.01114(4)(c) and applied an incorrect definition of "sufficiently mature." Therefore, we review de novo the circuit court's order on this issue. See Dep't of State, Div. of Elections v. Martin, 885 So.2d 453, 455 (Fla. 1st DCA 2004); Racetrac Petroleum, Inc. v. Delco Oil, Inc., 721 So.2d 376 (Fla. 5th DCA 1998) (stating that "judicial interpretation of Florida statutes is a purely legal matter and therefore subject to de novo review"). The *939 circuit court improperly held Doe to the standard of a fully-grown adult, quoting Webster's definition of a mature person as one "fully developed in body and mind." The statute does not require Doe to prove that she has the maturity of an adult. See In re Doe, 30 Fla. L. Weekly D2575, ___ So.2d ___, 2005 WL 3007102 (Fla. 2d DCA Nov.10, 2005).
In determining whether a minor is "sufficiently mature," the court need only find that the minor has the necessary emotional development, intellect and understanding to make an informed decision regarding terminating her pregnancy. See, e.g., In re Doe, 19 S.W.3d 249, 255-56 (Tex.2000); In re Doe, 126 N.C.App. 401, 485 S.E.2d 354 (1997); In re Anonymous, 664 So.2d 882 (Ala.1995); see also § 390.0114(4)(e). Obviously, this determination will depend on the circumstances of each petitioner for judicial waiver. See Bellotti v. Baird, 443 U.S. 622, 643, n. 23, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). Factors which evidence sufficient maturity include, but are not limited to, the minor's physical age, her understanding of the medical risks associated with the procedure as well as emotional consequences, her consideration of options other than abortion, her future educational and life plans, her involvement in civic activities, any employment, her demeanor and her seeking advice or emotional support from an adult. See id. at 640-41, 99 S.Ct. 3035; In re Doe, 30 Fla. L. Weekly at D2577, ___ So.2d at ___; In re Doe, 19 S.W.3d at 256.
The circuit court based its grounds for immaturity on the fact that Doe had only recently turned 17, that she had no plans to marry the father of the child whom she had been dating for three months, that she felt that she was not ready to take care of a baby, and that she was not required to provide for or contribute to her own support. If this were the test for determining "sufficient maturity," then virtually no minors could receive judicial bypasses unless their parents were so unfit as to render the minors as de facto adults.
The statutory term "sufficiently mature" does not require Doe to be self-sufficient. It is hardly surprising that a 17-year-old high school student continues to live at home under the direction, guidance, and security of her parents. One would hope that most minors are provided for by their parents and/or guardians, and that they are not expected to support themselves. The Second District Court of Appeal in In re Doe has recently eloquently stated that:
Certainly, it could be expected that most such petitioners live with their parents; that many of them have learned of their pregnancies via commercially available tests administered at home; it may well be that many will have been directed to the courthouse by the very medical personnel they sought to consult. Finally, who can doubt that most minors  indeed, most adults  in Doe's position would fear that divulging this decision would damage their relationships with their parents? These facts, standing alone, simply bear no logical relationship to the statutory grounds for a judicial bypass of the parental notification requirement. At best, they beg the question whether those grounds exist in this case. More importantly, if those few circumstances are sufficient in themselves to justify withholding a judicial bypass, then virtually no minor could ever obtain one under Florida's parental notification statute.
30 Fla. L. Weekly at D2576, ___ So.2d at ___. (footnote omitted).
We conclude that the circuit court's findings support, by clear and convincing evidence, the conclusion that Doe is sufficiently mature to decide whether to terminate *940 her pregnancy. The court found that Doe was capable of making some or many of her everyday decisions. Although the circuit court held that Doe was not of sufficient age to bypass parental notification, Doe's age of 17 bears positively on the statutorily-mandated determination of Doe's emotional development and maturity. In fact, the court portrayed Doe's demeanor as confident and self-assured during the hearing and stated that she was cognizant of the gravity of the proceedings. This demonstrates Doe's maturity and understanding of her decision. Therefore, Doe satisfied the clear and convincing standard of proof required in section 390.01114(4)(c).
In addition, the circuit court inappropriately substituted its own experience for that of Doe's sworn testimony. In reaching its determination that Doe failed to establish that notification was not in her best interest, the court stated that it:
must go beyond the mere words of the Petitioner and try to evaluate the totality of the circumstances presented. If the Court relied on just the testimony of the Petitioner, who is seeking the relief, that the Court would grant the relief sought in almost all instances and it would be shirking its responsibility to make an objective decision on the totality of the circumstances presented to the Court in making its decision. The Court must use its own background and life experiences to weigh and evaluate the testimony.
The court further stated that it "has four children of its own and once was a seventeen year old himself."
Courts in judicial bypass cases are constrained to consider only the record in making a decision. In re T.W., 551 So.2d 1186, 1196 (Fla.1989) (stating that a decision should not be based on a trial court's moral, religious or political beliefs). A circuit court can arrive at its conclusions on the issue of waiver of parental notification only from matters presented at the hearing and not from matters of personal knowledge. Based upon the court's statements in its order, the circuit court was obviously influenced by matters outside the record. As such, its conclusions were in error. See Dade County Med. Ass'n v. Samartino, 213 So.2d 627, 631 (Fla. 3d DCA 1968).
Accordingly, we reverse the circuit court's final judgment and direct the circuit court to grant the petition for waiver of parental notice of termination of pregnancy.
REVERSED.
PADOVANO and BROWNING, JJ., concur; HAWKES, J., dissents with opinion.
HAWKES, J., dissenting.
In its effort to circumvent the well-established rule that appellate courts are not permitted to engage in fact finding or to re-weigh evidence, the majority re-characterizes the issue before us as one of statutory interpretation and applies a de novo standard of review.
This case does not involve a question of statutory interpretation. This is simply a case where the majority rejects the trial court's factual findings. A significant portion of the majority opinion discusses selected facts that were before the trial court. The majority then re-weighs its selected facts to reach a result different from that reached by the trial court. Since the trial court's factual findings are supported by competent, substantial evidence, they may not be rejected. I would affirm.