MAKAR, J.,
dissenting.
At issue in this case is the parental bypass process, by which a trial court de *733 termines whether the emergent maturity of a pregnant minor is sufficient for her to terminate her pregnancy without her parents being told and whether telling her parents is not in her “best interest.” Following an abbreviated but personal eye-to-eye dialogue with the minor in a private non-adversarial hearing, a trial court writes an order explaining whether it was clearly convinced by the minor’s testimony. If so, as happens in about 95% of such cases, the minor may have an abortion without the physician telling her parents, nullifying their right of notification; no appeal occurs because the minor is the only party and has prevailed. If the trial court is not clearly convinced, as occurred here, the minor may appeal and an appellate court — whose judges did not see, hear or directly assess the minor’s demeanor, credibility, attitude or deportment — reviews an inert electronic record. That the evidentiary record on appeal consists solely of the minor’s transcribed testimony speaks volumes why — since 2011 — Florida law requires über-deference to the trial judge’s perceptiveness and judgment in making this highly personalized assessment. Given the recent legislative mandate that we can only overturn a trial court’s order denying parental bypass for an abuse of discretion, and that we are strictly prohibited from reweighing the evidence to reach a different result from that of the trial court, affirmance is required.
I.
Parental bypass proceedings are confidential, held entirely in the private confines of the trial court with only the minor, her attorney and a judge. They begin with the minor’s filing of a standard form petition. On Tuesday November 5, 2013, the minor, Jane Doe, filled out a standard form petition and sworn statement seeking a judicial waiver of the Florida law that would otherwise require that the treating physician provide at least 48 hours’ notice to Doe’s parents that their daughter seeks to terminate her pregnancy. § 390.01114(4), Fla. Stat. (2011).[10] Doe sought a waiver for two reasons: she was “sufficiently mature” to do so and notification of her parents was not in her best interest. She attested that she was 17 1/2 years old at the time of filing the petition.
On Friday November 8, 2013 — statutorily the last day for a ruling on her bypass petition[11] — the trial judge heard the testimony of Doe, who was assisted by her legal counsel. The ex parte hearing took approximately an hour.[12] Doe’s counsel questioned her for about twenty minutes, followed by questions from the trial judge for about twenty minutes, concluding with follow-up questioning by Doe’s counsel and ruminations by the trial judge. Just before the close of business that day, the trial judge filed a six-page order that detailed his factual findings and conclusions of law, utilizing the eight statutory factors.
A. Trial Judge’s Findings and Order
Before considering the merits of Doe’s petition, the trial court put the posture of the case in context, stating that the only issue “is whether there is a basis for waiving the requirement of parental notifiea *734 tion of a minor’s intent to seek an abortion” and that the court “is not being asked to approve or agree to the abortion,” which is “beyond the Court’s control and rests soundly with the child.” It stated further that “[ijrrespective of the outcome of these proceedings, the child will still have the right to seek an abortion if she so chooses; she must merely provide notice to her parents before doing so.”
To grant a petition, a trial court must find by “clear and convincing evidence” that the minor is “sufficiently mature to decide whether to terminate her pregnancy” or that “parental notification is not in the best interest of the child.” See § 390.01114(4)(c), Fla. Stat. The burden was on Doe to persuade the trial judge; absent a judicial finding in her favor, a trial court “must dismiss the petition.” Id. § 390.01114(c). In contrast to the “clear and convincing” standard of proof for these two types of parental bypass, a minor need only persuade the trial court “by a preponderance of the evidence that the petitioner is the victim of child abuse or sexual abuse inflicted by one or both of her parents or her guardian.” Id. § 390.01114(d). No child or sexual abuse is at issue in this case, however.

1. Sufficient Maturity

The original Parental Notice of Abortion Act, enacted in 2005, provided no guidance on what factors trial courts should consider in determining whether a minor had “sufficient maturity.” The matter was left to judicial development with courts using a wide variety of indicia. To bring some uniformity to the process, the Florida legislature in 2011 established a non-exhaustive list of eight factors that trial judges must consider in assessing whether a minor is deemed sufficiently mature to make the abortion decision herself, most drawn from the developing cases. Ch.2011-227, Laws of Florida. Seven of the mandatory statutory factors are indicators of maturity including the minor’s:
a. Age;
b. Overall intelligence;
c. Emotional development and stability;
d. Credibility and demeanor as a witness;
e. Ability to accept responsibility;
f. Ability to assess both the immediate and long-range consequences of the minor’s choices; and
g. Ability to understand and explain the medical risks of terminating her pregnancy and to apply that understanding to her decision.
§ 390.01114(4)(c)(l)(a)-(g), Fla. Stat. An eighth mandatory factor — which may compromise a minor’s maturity or judgment— is “[wjhether there may be any undue influence by another on the minor’s decision to have an abortion.” Id. § 390.01114(4)(c)(2). Courts may consider other non-statutory factors.
As to these eight factors, the trial court found one weighed in favor of the minor, two were neutral and the remaining five weighed against the minor:
4(c)(1) a. Minor’s Age [favorable weight]: Doe was 17 1/2 years old, within six months of adult status, making this factor weigh in her favor.
b. Minor’s overall intelligence [neutral]: Doe was “intelligent, but extremely naive when confronted with the reality of her situation. She seeks the waiver to avoid ruining her relationship with her parents, but fails to understand that lying to her parents will only lead to ruin of that very relationship. She has adopted a childish position which is akin to ‘if I close my eyes, this will all go away’ when confronting a very hard situation and decision. This factor is, at best, neutral.”
*735 c. Minor’s emotional development and stability [neutral]: Doe “is very developed and stable, but recognizes that her development and stability comes from her parents, and all of that stability may crumble if her parents are informed about her action in obtaining an abortion -without informing them. She normally operates at a stress level of 3 (on a scale of 1 to 10). She is currently operating at a stress level of 6. She said her stress level would be at a 10 if they found out about her abortion. Going through with the abortion without informing her parents may keep her from reaching a higher stress level. However, she will only be delaying stress, and it will likely build up as she has to continue with her deceit. Again, the factor is, at best, neutral.”
d. Minor’s credibility and demean- or as a witness [unfavorable weight]: Doe “had a good demeanor during her testimony. However, as far as her credibility, she stated during her testimony that she would be able to lie to her parents without having them figure it out. If she can deceive her parents— who probably know her better than any other person in the world — she would have no problem deceiving the Court. This factor does not weigh in favor of a waiver of parental notification.”
e. Minor’s ability to accept responsibility [unfavorable weight]: “While she appears responsible, she is totally dependent on her parents for financial support. She has never had to support herself. She has never had to live with the consequences of her own decisions in the past. Her parents were always there to support and help her. Thus, in making this decision — which will impact her for the rest of her life — she would be best served to have input from her parents who have loved and supported her for her whole life. This factor does not weigh in favor of waiver of parental notification.”
f. Minor’s ability to assess both the immediate and long-range consequences of the minor’s choice [unfavorable weight]: Doe “has only considered the immediate and long range consequences of choosing to go forward with the abortion. She has not fully considered alternatives to abortion— such as adoption or temporary custody arrangements — because she does not want to pursue those options. She has not sought out any information or assistance with regard to such potential choices. Instead, she believes her only option is to abort so that she can proceed with her plans to go to college and gain a degree and be gainfully employed. She has other options. Thus, this factor does not weigh in favor of waiver of parental notification.”
g. Minor’s ability to understand and explain the medical risks of terminating her pregnancy and to apply that understanding to her decision [unfavorable weight]: Doe “is very bright, and had almost an encyclopedic memory regarding the potential side effects of an abortion. However, the evidence did not confirm that she appreciates the potential that such side-effects may actually impact her and likely inform her parents of her decision. She was quite nonchalant in responding to questions regarding how she would deal with any medical problems — T would tell them I am not feeling good.’ Of course, that lie would only perpetuate the deceit between her and her parents and likely lead to an even greater fracturing of their relationship. This is ironic, inasmuch as she is seeking this waiver to protect that relationship by keeping them uninformed about her decision. *736 This factor does not weigh in favor of waiver of parental notification.”
4(c)(2). Whether there may be any undue influence by another on the minor’s decision to have an abortion [unfavorable weight]: Doe’s “only adult interaction with respect to her decision came from a counselor from planned parenthood (someone who may not be evenhanded in any discussion regarding potential problems and alternatives) and a therapist who was treating her boyfriend. She has not spoken to a medical doctor or to any adult friends or mentors (teachers, coaches, etc.). Leaving aside the impropriety of a licensed therapist counseling a child who is not his patient, there does not appear to be any circumstance where the child counseled with anyone who would have actual knowledge of her circumstances. The information provided by the counselor and therapist may have been accurate— no evidence was offered with respect to the information provided by these persons — but it was not viewed through a spectrum that took [Doe’s] personal situation into account. Accordingly, the influence on [Doe] may have been undue; there certainly is not clear and convincing evidence that it was not.”
Based upon his assessment of Doe’s testimony and these eight factors, the trial judge concluded that “there is not clear and convincing evidence that the minor is sufficiently mature to decide whether to terminate her pregnancy.”

2. Parental Notification Not in Minor’s Best Interest

Unlike the sufficient maturity standard, the bypass statute specifies no factors that trial courts must consider in determining whether notification of a minor’s parents is not in her best interest; indeed, it provides no definition of “best interest” whatsoever. Prior to 2011, a minor had to meet the preponderance of the evidence standard, which has since been replaced. Courts now are told that the minor must show “by clear and convincing evidence that the notification of a parent or guardian is not in the best interest” of the minor. § 390.01114(4)(d), Fla. Stat.
Lacking statutory factors, the trial court turned to the Second District’s decision in In re Doe, 973 So.2d 548, 553 (Fla. 2d DCA 2008), which said that consideration should be given to “the minor’s emotional or physical needs, the stability of the minor’s home and the possibility that notification would cause serious and lasting harm to the family structure; the relationship between the parents and the minor and the effect of notification on the relationship.”
Relying on Doe, the trial court noted that a “generalized fear that her parents will disagree with the decision is not sufficient reason to find that parental notification is not in the child’s best interest.” It held that “the evidence offered by [Doe] amounted to little more than” the type of generalized fear that is insufficient to establish a legal basis for parental bypass. The trial court further noted that Doe’s “parents would be at least as upset if they later found out about the pregnancy and abortion.” To support the possibility that Doe’s parents are likely to find out about the pregnancy or abortion, the trial court relied upon Doe’s testimony that she “and her parents live together under the same roof, they provide all of her financial support, and they interact with each other on a daily basis.” In addition, Doe works fifteen hours per week for her father in his home office. Due to this unity and togetherness of the family, the trial court deemed it “highly probable” that Doe’s parents would learn of the pregnancy or abortion, and that “[b]elieving otherwise is simply wishful thinking.” The trial court also noted Doe’s concession that her finan *737 cial concerns are “not sufficient, by themselves, to support a best interest finding” under the statute. See § 390.01114(4)(d), Fla. Stat. (the “best-interest standard does not include financial best interest or financial considerations or the potential financial impact on the minor or the minor’s family if the minor does not terminate the pregnancy.”).
The trial court concluded that Doe’s generalized fear that “her parents would be angry” if they learned of her pregnancy or plan to get an abortion “is not enough” to meet the statutory standard for bypass and that “there is not clear and convincing evidence to find that it is not in the child’s best interest to notify her parents of her intended decision.”
B. This Appeal
Doe filed a notice of appeal the following Tuesday, and a three-judge emergency panel was immediately assigned. We were presented with a most Spartan appellate record consisting of only the trial court’s order and the transcript of the minor’s testimony. No other evidence was presented in the trial court, and no legal memorandum or brief had been filed; Doe did not file a legal brief on appeal or request oral argument, and — due to time constraints and an intervening weekend[13] —the panel did not invoke its option to require briefing or oral argument.[14] As a consequence, the emergency panel decided the matter based on its review of the written order and transcript, supplemented only by the independent legal research of judges and staff.
II.
The core issue in this case is whether reversal of the trial court’s order can be justified under the highly deferential standard of appellate review, adopted in 2011, that applies to judicial bypass decisions. Before turning to this issue, it is helpful to discuss what interests are — and are not— at stake in parental notification cases well as the unique context in which appeals of bypass orders come to an appellate court.
A. Overview
First, as the trial judge noted, this case is not about whether Doe may decide to terminate her pregnancy. Florida law provides that “[a]n unwed pregnant minor may consent to the performance of medical or surgical care or services relating to her pregnancy by a hospital or clinic or by a physician ..., and such consent is valid and binding as if she had achieved her majority.” § 743.065(1), Fla. Stat.[15] This right is hers and hers alone; she may exercise it even if her parents are notified of her intention to get an abortion, regardless of their viewpoints about the matter, and even if they withhold economic or other support.
Second, competing against the minor’s right is the fundamental legal right of parents to control the upbringing of their children, including the provision of medical *738 care. See Pierce v. Soc’y. of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); M.N. v. Southern Baptist Hosp. of Fla., Inc., 648 So.2d 769, 770 (Fla. 1st DCA 1994) (“Ordinarily, decisions regarding the care and upbringing of minor children will be left to the parents. This parent-child relationship is a fundamental liberty interest which is constitutionally protected.”). The government “may override the fundamental liberty interest in the parent-child relationship only when there is a sufficiently compelling state interest.” M.N., 648 So.2d at 771. Similarly, in Florida, as elsewhere around the country, parents generally have the right to be informed about, and give consent for, proposed medical procedures on their children. O’Keefe v. Orea, 731 So.2d 680, 686 (Fla. 1st DCA 1998) (“the right to consent to medical treatment for a child resides in the parent who has the legal responsibility to maintain and support the child.”); see generally Jessie Hill, Medical Decision Making hy and on Behalf of Adolescents: Reconsidering First Principles, 15 J. Health Care L. & Pol’y 37, 57 (2012) (discussing the evolution of parental medical decision-making on behalf of their minor children).
The abortion procedure is treated differently, but parental notification — unlike parental consent — remains permissible, particularly where a bypass procedure is in place. Without deciding if parental bypass is required in the notification context, the United States Supreme Court in Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) upheld on constitutional grounds an Ohio statute that required parental notice be given by the physician performing an abortion and required that minors prove their maturity or best interests by clear and convincing evidence to obtain a judicial bypass, a statute similar to the one at issue here. A year prior to this decision, our supreme court in In re T.W., 551 So.2d 1186, 1188 (Fla.1989), struck down the state’s parental consent statute based on the state constitutional right of privacy that encompasses a woman’s right to seek an abortion, which the court extended to minors. The effect of T.W. was to carve out abortions as exceptions to the general rule that parental consent is required for medical decisions involving minors. Left open was whether parental notification was permissible. In North Florida Women’s Health and Counseling Services, Inc. v. State, 866 So.2d 612 (Fla.2003), our supreme court foreclosed this right by striking down the then-existing parental notification statute. This led the people of Florida to pass a constitutional amendment in 2004 that overturned that decision and empowered the legislature to re-establish parental notification as a constitutionally protected right, provided it was consistent with United States Supreme Court precedent on minors’ privacy rights and provided for exceptions available via judicial waiver of notification.[16] The legislature followed suit in 2005 by enacting the Parental Notice of Abortion Act, creating section 390.01114, which requires parental notification excepting possible waivers if the minor proves sufficient *739 maturity, abuse by parents, or that notification is not in her best interest; as discussed elsewhere, the Act was amended significantly in 2011.
Third, the Act creates an asymmetry in the appellate process: only denials of petitions are appealable; grants are not. An “expedited appeal shall be made available ... to any minor to whom the circuit court denies a waiver of notice,” but an “order authorizing a termination of pregnancy without notice is not subject to appeal.” § 390.01114(4)(g), Fla. Stat. This asymmetry exists because the minor is statutorily the only party in the non-adversarial proceeding; a prevailing minor has no reason to appeal.[17] But this asymmetry has consequences. It renders erroneous grants of petitions unreviewable, the trial court’s judgment forever shielded from appellate — and public — scrutiny; and parental rights overridden unilaterally in secret without due process. This matters because grants of petitions occur about 95% of the time statewide.[18] This extraordinarily high rate of approval reflects that the bypass process is a test that is not easily failed; indeed, it historically has been close to a stamp of approval, peaking at 97% in 2010, which led to legislative modification in 2011. In contrast, denials of petitions occur far less frequently and result in few published appellate opinions. This appeal arises from this small tranche of cases to which the newly enacted deferential standard of review applies.
B. Appellate Standard of Review
The 2011 amendments to the Act established, for the first time, an explicit appellate standard of review that applies to parental bypass cases:
The reason for overturning a ruling on appeal must be based on abuse of discretion by the court and may not be based on the weight of the evidence presented to the circuit court since the proceeding is a nonadversarial proceeding.
§ 390.01114(4)(b)(2), Fla. Stat. This is no ordinary standard of appellate review, and is unlike those applied in parental bypass cases previously. It is a confluence of two highly deferential standards that apply to confidential ex parte proceedings in which adversarial truth-testing does not occur. No appellate court has yet explored the application of this new statutory standard. Only two reported appellate cases have arisen since the standard became effective, one per curiam affirmance[19] and the other a reversal that did not apply the full statutory standard of review,[20] making this case one of first impression.
*740 Application of this new appellate standard begins with the recognition that Doe had to present “clear and convincing” evidence to obtain a waiver (under either a “sufficient maturity” or “not in her best interest” approach). This “heightened standard of proof’ is constitutionally acceptable where a “bypass procedure contemplates an ex parte proceeding at which no one opposes the minor’s testimony.” Akron Ctr. for Reprod. Health, 497 U.S. at 516, 111 L.Ed.2d 405. Clear and convincing evidence — which is greater than the “preponderance of the evidence” standard — requires:
[T]hat the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.
Inquiry Concerning Davey, 645 So.2d 398, 404 (Fla.1994) (emphasis added) (quoting Slomowitz v. Walker, 429 So.2d 797, 800 (Fla. 4th DCA 1983)). Stated in a shorthand way, this “intermediate level of proof entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.” Inquiry Concerning Davey, 645 So.2d at 404 (emphasis added).
Here, the trial court was tasked with adjudging Doe’s testimony to determine whether it alone — as the “sum total of the evidence” in this case — -was of “sufficient weight” to convince him “without hesitancy” that Doe met the statutory requirement of “clear and convincing” evidence of her maturity or that negating parental notification was in her best interest. He determined they did not, expressing reservations about her maturity level and judgment, and concluding that five of the eight factors weighed against her, one was in her favor, and two were neutral. It is this personalized, weighted judgment of the trial judge that is now at issue. We are required to give exceptional deference to it, not as a rubber stamp, but as a matter of appellate responsibility in applying the “abuse of discretion” and “no reweighing of evidence” standards discussed in the next section.

1. Abuse of Discretion & No Reweighing Evidence Standards

The abuse of discretion standard of review, by itself, is exceptionally deferential to trial court judgment calls; it is close to the weakest form of judicial scrutiny in the appellate toolbox — exceeded only by the much-maligned “gross abuse of discretion” standard.[21] It is defined in many ways, the common theme being one of deference to the judgment of the fact-finder who personally assessed the witnesses and evidence. Canakans v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980) (“The trial judge can ordinarily best determine what is appropriate and just because only he can per *741 sonally observe the participants and events of the trial.”)- Canakaris, a marital dissolution case, explained the “abuse of discretion” standard in context, stating:
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the “reasonableness” test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
Id. at 1203 (emphasis added). The court emphasized that the trial court’s exercise of discretion must be extreme to warrant a finding of abuse:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
Id. (emphasis added) (citing Delno v. Mkt. St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942)). As our colleague Judge Padovano has summarized in his treatise:
A mere disagreement from an appellate perspective with the reasoning or opinion of the lower tribunal is not enough to justify the reversal of a discretionary decision.2 The judge or judicial officer presiding over the trial is in a better position to resolve discretionary issues, and it would be improper to overturn a discretionary decision simply because a panel of appellate judges might have resolved the issue in a different fashion had they been on the trial bench.
2 Philip J. Padovano, Florida Appellate Practice § 19:5 (2014 ed.) (emphasis added). As my colléagues and I have noted, the application of this standard does not always come easily. See Padovano, supra, § 19:5 (“As in many other areas of appellate review, the statement of the principle comes much more easily than does the task of applying it.”); see also Madison v. State, 132 So.3d 237 (Fla. 1st DCA 2013) (Wetherell, J., dissenting) (“[i]f reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.”), & n. 10 (Makar, J., noting the difficulties in applying a one-size-fits-all abuse of discretion standard).
Canakaris was an adversarial dissolution case, but we are dealing with a non-adversarial ex parte proceeding. Deference under the abuse of discretion standard is at its nadir in this context. Unlike adversarial hearings, the minor’s eviden-tiary presentation is one-sided; she has the advantage of presenting her story without ordinary adversarial truth-testing. This is why characterizing a minor’s narrative as amounting to “undisputed testimony” or “undisputed evidence” is a non se-quitur; it is “undisputed” because no one in an adversarial role is present to dispute it.[22] Monologues without adversarial seru- *742 tiny aren’t necessarily true, particularly where a trial judge expresses concerns about a minor’s credibility, as is the case here.
But a minor’s testimony is all a trial judge has to assess the statutory factors of the minor’s age; overall intelligence; emotional development and stability; credibility and demeanor; ability to accept responsibility and assess the consequences of her choice; and ability to understand, explain and apply to herself the medical risks of terminating her pregnancy. § 390.01114, Fla. Stat. Perhaps with the exception of age,[23] these factors are highly subjective ones from which a trial court must glean the minor’s demeanor, credibility, judgment, responsibility, development, stability, and so on. Rather than quantitative factors governed by formal logic, reason or mathematical precision, these are predominantly qualitative factors governed by the trial judge’s perspicacity and discernment, which are not readily second-guessed on appeal, thus the great deference due.
Most telling is that none of the preexisting parental bypass cases from this Court applied either an abuse of discretion or a no-reweighing evidence standard of appellate review.[24] Deferential review did not occur. Instead, this Court reversed denials of petitions based on its independent assessment of the evidence,[25] a different standard from that which the legislature has decreed starting in 2011.
Combining the trial and appellate standards of review results in the following guidepost: to reverse the denial of a parental bypass petition, an appellate court must conclude that no reasonable judge would have been other than clearly and convincingly persuaded by Doe’s testimony as to her maturity and that parental notification was not in her best interest. Stated differently, reversal requires an appellate court to conclude that every reasonable judge would have been clearly and convincingly persuaded by the “sum total” of Doe’s testimony, which “must be of sufficient weight to convince the trier of fact without hesitancy.” Inquiry Concerning Davey, 645 So.2d at 404.
When put in this light, Doe’s burden on appeal is an extraordinary one; indeed, it would be an exceptional case where a fact-finder’s failure to be clearly and convincingly persuaded by a litigant’s testimony was a complete absence of reason, particularly where a multi-factor statutory balancing test is applied. "While the casebooks have many examples of an appellate court reversing a trial court’s finding that clear and convincing evidence existed, it is a lonely endeavor searching for appellate *743 cases reversing a trial court’s finding that clear and convincing evidence was not presented. They exist, but they are few and often involve the type of appellate reweighing of facts that is impermissible in this case.[26]
In addition to the abuse of discretion standard, the statute prohibits reversing a denial of a waiver “based on the weight of the evidence presented to the circuit court since the proceeding is a nonadver-sarial proceeding.” § 390.01114(4)(b)(2), Fla. Stat. Our review, which is already at the outer limits of deference, is further constrained by this limitation. Both standards are counter-weights against a non-adversarial proceeding that had produced a 95% grant rate of petitions seeking bypass, orders that — no matter how egregiously wrong — terminate parents’ constitutional rights with no due process or appellate review.
No statute tells trial courts how much weight they must give each of the statutory factors or whether any particular combination of factors is more persuasive in determining whether a minor is sufficiently mature (or whether negating parental notification is in her best interest). The legislature, concerned by a non-adversarial process that heavily favors the grant of petitions that nullify parental rights, instituted deferential appellate standards to ensure that in those few cases where trial courts are not clearly and conclusively persuaded in their personalized assessments of minors, appellate tribunals must defer to those findings and not reweigh them to their liking. To the extent a panel is unclear on a trial court’s findings, it has the option of remanding for a more definitive ruling within three days, § 390.01114(4)(b)(2), Fla. Stat., a further safeguard against appellate overreaching.

2. Sufficient Maturity

In this case, the trial court’s overall assessments about Doe’s demeanor, credibility, judgment, responsibility, development, and stability in determining her level of maturity are not in the “arbitrary, fanciful, or unreasonable” category and thereby not an abuse of discretion. We would have to second guess the trial court’s assessment of these qualitative, subjective, and highly personalized characteristics, parsing and rejecting them (or reweighing them) to reach a different result. Other than her age, the trial court found five of the factors weighed against Doe and two were neutral. Given the trial court’s conclusions about the eight statutory factors, and his expressed concerns about her credibility and possible undue influences, our responsibility is to affirm.
As to her overall intelligence, the trial court found her to be intelligent but naive, rendering this factor in equipoise. Stated differently, she was “book smart” from an academic-type perspective but lacking “life smarts” in her perspective about her situation, saying Doe “has adopted a childlike position which is akin to ‘if I close my eyes, this will go awa/ when confronting a very hard situation and decision.” A reasonable judge could have reached the conclusion on this record that this factor was neutral as to Doe; a reasonable judge could also have reached the conclusion on this record that this factor favored or disfavored Doe.
Next, the trial judge addressed Doe’s emotional development and stability, find *744 ing her to be “very developed and stable” due to her parents’ influence and upbringing. He found, however, that “all of that stability may crumble” if her parents are bypassed in the notification process. A reasonable judge could have reached the conclusion on this record that this factor was neutral as to Doe. ,
As to credibility and demeanor as a witness, the trial court acknowledged that Doe had “good demeanor during her testimony” but concluded that her credibility was in question (“If she can deceive her parents — who probably know her better than any other person in the world — she would have no problem deceiving the Court.”). We are not at liberty to second-guess a trial court’s explicit finding that a witness was not credible; discounting the impact on the trial judge of Doe’s admission that she can be deceptive and hide the truth is beyond our authority. Although the trial court made some preliminary comments at the hearing, such as saying Doe appeared to be a “credible witness,” that does not allow us to reject the trial court’s ultimate conclusions in his written order, reached after time for deliberation following the hearing. The trial court apparently concluded, after reflection, that this factor did not favor Doe, despite his initial impression. A reasonable judge could have reached the conclusion on this record that this factor disfavored Doe; a reasonable judge could have also concluded to the contrary if he had found Doe credible.
On the factor of Doe’s ability to accept responsibility, the trial court concluded that although Doe “appears responsible” it was his judgment that Doe had led a life dependent entirely upon the love and support of her family. Because Doe “had never had to live with the consequences of her own decisions” her level of responsibility had been less significant given “[h]er parents were always there to support and help her.” Given her lack of experience in shouldering responsibility by herself, the trial court concluded that Doe “would be best served to have input from parents who have loved and supported her for her whole life.” Not only is this finding supportable on this record, it negates Doe’s testimony — which the trial court was permitted to reject or give little weight — that Doe’s entire family would disown her, kick her out of the house, and leave her homeless for the rest of her life. A reasonable judge could have reached the conclusion on this record that this factor disfavored Doe.
Next, the trial court concluded that Doe “only considered the immediate and long-range consequences” of an abortion but had not considered alternatives, which is not fully accurate given the equivocal record on this point. Doe implicitly rejected adoption because she believed she’d not be welcomed at home if she gave up her child. Doe was aware of options but did not appear to assess fully her range of choices; instead, she “believes her only option is to abort so she can proceed with her plans to go to college and gain a degree and be gainfully employed.” A reasonable judge could have reached the conclusion on this record that this factor disfavored Doe, concluding that the failure fully to consider (versus be aware of) options represented immature thinking; indeed, the statute speaks in terms of a minor’s “[ajbility to assess both the immediate and long-range consequences of the minor’s choices.” § 390.01114(4)(c)(l)(f), Fla. Stat. But a reasonable judge could also have reached the conclusion on this record that this factor favored Doe, believing that she had a firmness and conviction of mind that led her to reject her other options.
As to the seventh, and final minor-centric factor, the trial court found that Doe is “very bright” with an “encyclopedic memo *745 ry” of the “potential side effects of an abortion” reflecting her “ability to understand and explain the medical risks of terminating her pregnancy.” But, in the trial court’s view, she was less than adept at applying “that understanding to her decision” as the statute specifies. Though she was knowledgeable on the medical process, she lacked an appreciation that potential side-effects might affect her health and tip off her parents. She was “quite nonchalant” in responding to how she would deal with adverse medical problems arising from the abortion, saying she’d tell her parents “I’m not feeling good” if she were to have complications. A reasonable judge could have reached the conclusion on this record that this factor disfavored Doe; a reasonable judge also could have reached the conclusion on this record that this factor was neutral as to Doe, or perhaps even favorable.
The trial court was justifiably concerned about the eighth statutory factor, which is the only one that assesses whether any “undue” influences “may” have affected the minor’s decision-making in choosing to have an abortion. This was a significant issue that attracted the trial judge’s attention. Doe told the trial judge she had met with a counselor from Planned Parenthood as well as her boyfriend’s therapist, both of whom supported her decision to seek an abortion. Though the trial judge expressed concerns that Planned Parenthood may not have been even-handed in apprizing Doe of “potential problems and alternatives”, he appeared more concerned with the “impropriety of a licensed therapist counseling a child who is not his patient” and who lacked knowledge about Doe’s personal circumstances, presumably her relationship with her parents and extended family. On this record, a reasonable trial judge could have concluded that a risk of undue influence “may” have existed, particularly as to the boyfriend’s therapist (whose professional loyalties were to the boyfriend, not Doe) that undermined Doe’s request for relief. § 390.01114(4)(c)(2), Fla. Stat. (“Whether there may be any undue influence by another on the minor’s decision to have an abortion.”) (emphasis added). A reasonable trial judge may thereby have weighed this factor against Doe in deciding whether clear and convincing evidence existed as to her maturity level; or it might have found it neutral or perhaps even favorable, depending on how the services provided by Planned Parenthood and the boyfriend’s therapist are collectively viewed.
Overall, a reasonable trial judge could have interpreted Doe’s testimony and demeanor to pass upon the statutory factors in favorable, unfavorable, and neutral ways. Even if an appellate court disagrees with a trial court’s assessment on one or more statutory factors, the appellate calculus is severely constrained by our deferential standard of review. That we disagree with some of the trial court’s assessments does not empower us to overturn his overall judgment or recast or reweigh it. Trial courts do not specify, nor are they required to specify, the weights they place on the many factors they consider in making these personalized assessments. For all we know, this trial court weighted the minor’s lack of overall credibility heavily or gave heavy weight to the influence that the boyfriend’s psychologist may have had on the situation. We simply don’t know, which is why the legislature has told us to not reweigh the evidence to justify a reversal.
That said, we are not a rubber stamp of approval; reversals are justified where, for example, a trial court ignores half of the statutory factors as occurred in In re Doe, 113 So.3d 882 (Fla. 2d DCA 2012), or imposes a level of adult maturity upon the minor that is legally impermissible under *746 the statutory language, In re Doe, 969 So.2d 1068 (Fla. 1st DCA 2007), or decides it “must use its own background and life experience to weigh and evaluate the testimony” thereby substituting its own experience for that of the minor. In re Doe, 924 So.2d 935 (Fla. 1st DCA 2006). The new heightened standard of appellate review is not toothless. But it surely prohibits the appellate temptation to disagree with and reweigh the discretionary judgment calls of trial courts in the (literal) handful of close cases on appeal. The legislature brought this to an end in 2011 as a modest counter-weight to the scales being heavily weighted against parents’ rights and in favor of minors in these non-adversarial, ex parte hearings. Failing to follow the new legislative standard negates the legislature’s directive and restores, by judicial interpretation, the pre-2011 appellate approach and mindset.
That Doe’s situation may have factual similarities to minors in the few reported parental bypass cases that have reversed trial courts does not decide Doe’s case. None is similar to this case; most, if not all, are merely persuasive given the significant changes to the Act in 2011.[27] Each minor’s situation is decidedly unique and individualized making inter-minor comparisons on appeal a tenuous practice. Which is why the generalized concept that “essentially alike cases should reach the same result” is illusory in the parental bypass context where few Florida appellate decisions under the Act exist, each with significant factual and procedural differences that distinguish them from this case; no “essentially similar” cases exist, particularly now that appellate recasting of the facts is prohibited. Common factors exist in some of the cases reversing denials of petitions (such as age, good grades, and so on), but it is a multi-factored statute that trial courts apply. Placing emphasis on a few common factors to the exclusion of others, while ignoring differences among the minors involved, exemplifies the type of appellate reweighing now prohibited.
Under the deferential standard that applies, the trial court’s judgment should be affirmed. To the extent that the panel felt the trial court’s order was equivocal, ambiguous or otherwise in need of clarification, the bypass statute in 2011 was amended to permit an expedited remand.[28] That option was suggested but not invoked; it should have been to enable the trial court to clarify the areas of perceived concerns by the panel. In any event, a reasonable trial judge could have ruled as this one did on this record.

3. Notification Not in Minor’s Best Interest

The trial court’s conclusion that Doe failed to present clear and convincing evidence that parental notification was not in her best interest is an entirely reasonable one, particularly given the trial court’s findings that Doe’s consternation about her parents was too generalized to justify bypassing them.
The purpose of the Parental Notice of Abortion Act is to safeguard the constitutional rights of parents in the care and upbringing of their children by requiring their notification-not consent-before an *747 abortion can be performed on their daughter while concurrently providing exceptions where the minor is clearly and conclusively shown to be sufficiently mature or that parental notification would not be in her best interest. It is a balance of interests, but one presumptively struck in favor of parental notification. The reason for laws favoring parental notification, and thereby parental involvement, was best expressed by Justice Kennedy in Akron Center:
A free and enlightened society may decide that each of its members should attain a clearer, more tolerant understanding of the profound philosophic choices confronted by a woman who is considering whether to seek an abortion. Her decision will embrace her own destiny and personal dignity, and the origins of the other human life that lie within the embryo. The State is entitled to assume that, for most of its people, the beginnings of that understanding will be within the family, society’s most intimate association. It is both rational and fair for the State to conclude that, in most instances, the family will strive to give a lonely or even terrified minor advice that is both compassionate and mature. The statute in issue here is a rational way to further those ends.
Akron Center, 497 U.S. at 520, 111 L.Ed.2d 405 (emphasis added). Punctuating this principle, he concluded “[i]t would deny all dignity to the family to say that the State cannot take this reasonable step in regulating its health professions to ensure that, in most cases, a young woman will receive guidance and understanding from a parent.” Id.
Given its protection of parental rights, the statute says that parental bypass is permissible only upon a showing “by clear and convincing evidence that the notification of a parent or guardian is not in the best interest ” of the minor. § 390.01114(4)(d), Fla. Stat. (emphasis added). By this language, the legislature is not asking trial courts to judicially, implement whatever the minor believes is in her best interest. See Koshenina v. Buvens, 130 So.3d 276, 282 (Fla. 1st DCA 2014) (statute saying court must appoint ward’s designated pre-need guardian unless doing so “is contrary to the best interests of the ward” does not allow generalized “ ‘best interests’ analysis”). If that were the case, best interest petitions would always be granted. Few minors with unwanted pregnancies welcome breaking the news to their parents; they seek bypass because they believe it serves their interest to secret the matter from them.[29] But the Act does not afford them automatic relief on this basis; instead, they must prove an exception with clear and convincing evidence that their parents’ rights should be judicial overridden. Much like the analysis in Koshenina, the judicial mind in parental bypass cases must ask whether parental notification is sufficiently contrary to the minor’s best interest to nullify the constitutionally-protected parental right in their child’s. upbringing. Id. at 281.
Second, the record can be read as showing an insupportable fear by Doe that her entire family would abandon her forever, leaving her homeless and destitute, if her parents were notified of her intent to get an abortion. Doe’s testimony shows she has a close, loving relationship with her parents who have been supportive in all *748 her endeavors, that she works closely with her father in their home each day for a family business, and that her parents listen to her and may get upset from time to time, but get over it quickly. No evidence of physical or emotional abuse exists. Doe’s parents appear stable and nurturing. That they are Catholics who have merely “hinted” that they are against abortion is a shallow reason for terminating their legal right of notification; by that standard a minor possesses a unilateral religious veto, deployed by simply saying “My parents are [fill in the religious faith] and are against abortion.” Based on this generalized fear that her Catholic parents would react by disowning her, Doe believed it in her best interest to bypass them. This general fear — one that every pregnant minor is likely to have — is not enough to deprive parents of their constitutional right in the upbringing of their children; and it “would deny all dignity to the family” to terminate the parents’ right to provide guidance and counsel on so slender a basis. Akron Center, 497 U.S. at 520, 111 L.Ed.2d 405. On this record, the trial court did not err in concluding that Doe’s generalized fear was insufficient; indeed, he could have concluded it was in Doe’s best interest that her parents be notified of her intention to terminate her pregnancy given the years of familial support they have provided.
III.
Keeping in mind that a trial judge may not grant a parental bypass petition unless clear and convincing evidence is presented that persuades him to do so, the trial judge here made a judgment call and concluded that five factors weighed against parental bypass, one was favorable, and two were neutral. Other trial judges confronted with the same record, and observing Doe as this judge did, may have made different conclusions about these factors or weighed them differently in reaching different conclusions. It could be that a majority or even a super-majority of appellate judges — reading only the transcript of the minor’s testimony — is left with a different view of the minor’s maturity and whether notification would be contrary to her best interest. We are not entitled to engage in that exercise; instead, the question is only whether a reasonable judge could have reached the conclusion of this trial judge based on the non-adversarial appellate record presented under the iiber-deferential standard of appellate review. This exercise in appellate restraint requires affir-mance.

. Unless otherwise noted, the 2011 version of the statute is referenced.

. See § 390.01114, Fla. Stat. ("The court shall rule, and issue written findings of fact and conclusions of law, within 3 business days after the petition is filed, except that the 3-business-day limitation may be extended at the request of the minor.”).

.The hearing transcript was fifty-six pages, which is approximately the length for one hour of argument in the United States Supreme Court.

. § 390.01114(4)(b)(2), Fla. Stat. ("An appellate court must rule within 7 days after receipt of appeal_”); id. § 390.01114(4)(g) ("An expedited appeal shall be made available, as the Supreme Court provides by rule, to any minor to whom the circuit court denies a waiver of notice.”).

. See Fla. R.App. P. 9.110(n) ("Briefs or oral argument may be ordered at the discretion of the district court of appeal. The minor may move for leave to file a brief and may request oral argument."), adopted by, In re Amendments to Florida Rule of Appellate Procedure 9.110, 84 So.3d 224, 225 (Fla.2012).

.Although section 743.065(3) provides that "[n]othing in this act shall affect the provisions of s. 390.0111” — this latter section used to require parental consent- — is an unconstitutional condition that has been eliminated from this statute.

. Article X, section 22, of the Florida Constitution provides:
The Legislature shall not limit or deny the privacy right guaranteed to a minor under the United States Constitution as interpreted by the United States Supreme Court. Notwithstanding a minor’s right of privacy provided in Section 23 of Article I, the Legislature is authorized to require by general law for notification to a parent or guardian of a minor before the termination of the minor’s pregnancy. The Legislature shall provide exceptions to such requirement for notification and shall create a process for judicial waiver of the notification.

. Staff analysis says that "[d]ue to the ex parte nature of these proceedings, orders granting a waiver are not subject to appeal.” Final Bill Analysis, HB 1247, at 6.

. Final Bill Analysis, HB 1247, at 3-4 (noting that data from the Office of State Courts Administrator showed that from 2006 to 2009 "courts have granted an average of 95% of the petitions and that in the 2010 calendar year, the percentage of waivers granted increased to over 97%.”). The 95% rate continued through 2011, but fell to 89% in 2012, which was after the effective date of October 1, 2011 for the Act, reflecting that 35 or 10.7% of petitions were dismissed. Office of the State Ct. Admin., Parental Notice of Abortion Act: Petitions Filed and Disposed by Circuit and County, January through December 2011 & 2012 (both on file with the administration).

. In re Doe, 112 So.3d 791 (Fla. 5th DCA 2013).

. In re Doe, 113 So.3d 882 (Fla. 2d DCA 2012). A majority of the Second District reversed a denial of bypass, finding the trial court’s order entirely ignored about half of the statutory factors: it acknowledged the abuse of discretion standard and appears to have failed to mention or heed the legislative admonition not to reweigh the evidence. Id. at 886-88. (Black, J., dissenting).

. See Laura Whitmore, Abuse of Discretion: Misunderstanding The Deference Accorded Trial Court Rulings, 79 Fla. B.J. 83 (2005) (urging elimination of the "gross abuse of discretion” standard because "it is now difficult or impossible to provide a useful definition of" it due to the “Canakaris 'no reasonable person’ definition"); see also Emmer v. Brucato, 813 So.2d 264, 265 (Fla. 5th DCA 2002) ("Thus, if an abuse of discretion is an action by the trial court that no reasonable judge would take, what then is a "gross” abuse of discretion? Is it an action that only an extremely unreasonable judge would take?”).

. This Court, prior to the 2011 amendments, gave little deference to trial courts in the parental bypass context, holding that whatever deference was due in reviewing a trial court's factual findings was less compelling or weakened "when the evidence is undisputed and is presented to a judge sitting without a jury.” See In re Doe, 921 So.2d 753 (Fla. 1st DCA 2006) (citing In re Doe, 932 So.2d 278, 283-84 (Fla. 2d DCA 2005)). The legislature, *742 however, has decided that the non-adversarial nature of bypass proceedings requires a highly deferential appellate standard — not the less deferential one previously applied — thereby malting our prior precedents less relevant.

. It is possible, though not apparent on the record of this case, that a minor could overstate her age on her sworn statement to increase the likelihood of a finding of maturity. No definitive proof is required of age or any other factor; it is all left to the fact-finding of the trial court.

. In re Doe, 969 So.2d 1068 (Fla. 1st DCA 2007) (trial court applied an incorrect legal standard for determining whether minor was "sufficiently mature”); In re Doe 06-A, 932 So.2d 499 (Fla. 1st DCA 2006) (no discussion of the standard of review); In re Doe, 924 So.2d 935 (Fla. 1st DCA 2006) (trial court "misinterpreted" maturity statute rendering review "de novo”; concluded that trial court's findings "support, by clear and convincing evidence, the conclusion that Doe is sufficiently mature”; trial court "inappropriately substituted its own experience for that of Doe’s sworn testimony.”).

.See In re Doe, 921 So.2d at 755-56 (specifically noting that deference ordinarily due is not required in these cases).

. One notable example is this Court's decision in In re Doe, 924 So.2d 935 (Fla. 1st DCA 2006), which concluded that the "circuit court’s findings support, by clear and convincing evidence, that Doe is sufficiently mature” to terminate her pregnancy. Id. at 930. As the dissent noted in that case, however, the majority "reweighs” the facts "to reach a result different from that reached by the trial court.” Id. at 940.

. All pre-2011-amendment cases were decided (a) using a different standard of appellate review; (b) on an ad hoc, case-by-case basis, each appellate court deciding what factors it deemed important (none applying a uniform statutory list); and (3) on a "preponderance of the evidence” standard where notification was "not in the best interests” of the minor.

. § 390.01114(4)(b)(2), Fla. Stat. ("[A] ruling may be remanded with further instruction for a ruling within 3 business days after the remand.”); Ch.2011-227, Laws of Florida, § 1.

. The secrecy that may arise from bypassing the parent is an ancillary consequence of either the minor’s proven maturity to obtain the abortion on her own without parental notification or a clear and conclusive showing that the legally-required notification of her parents is not in her best interest. Secrecy alone is not an independent justification for bypass.